2019 IL App (1st) 172250

No. 1-17-2250

Order filed September 12, 2019

Fourth Division

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee | ) | Cook County |
| | ) | |
| v. | ) | No. 12C6-60795 |
| | ) | |
| WENDELL S. FRAZIER, | ) | Honorable |
| | ) | Allen Murphy, |
| Defendant-Appellant. | ) | Judge Presiding. |

---

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Gordon and Reyes concurred in the judgment and opinion

**OPINION**

¶ 1     Defendant, Wendell S. Frazier, was charged with attempted first degree murder, aggravated discharge of a firearm, and aggravated unlawful use of a weapon (AUUW) after he fired several gunshots at a vehicle being driven by Ryan McGhee on June 27, 2012. Prior to trial, defendant indicated that he intended to rely on section 7-1 of the Criminal Code of 2012 (720 ILCS 5/7-1 (West 2012)) in that he was justified in the use of force in defending himself. Defendant, a military veteran who did two tours of active duty in Iraq, sought to introduce the testimony of several healthcare providers, including a retained clinical psychiatrist, to establish his defense that at the time of the incident, he was suffering from combat-related post-traumatic

stress disorder (PTSD). The State filed a motion *in limine* to bar defendant's clinical psychologist from testifying as to defendant's mental state at the time of the incident. The court ruled that the clinical psychologist could testify but precluded the expert from testifying that "it was the [PTSD] that caused [defendant] to act this way" because that was a question for the trier of fact.

¶ 2      At trial, McGhee testified as to his version of the incident, and defendant testified extensively regarding his experiences in Iraq and his version of the incident. Defendant also presented the testimony of his former therapist at the United States Department of Veteran Affairs (VA), a clinical psychologist for the VA, and an expert clinical psychologist in the field of PTSD diagnoses. The court found defendant guilty of aggravated discharge of a firearm but not guilty of attempted first degree murder.[1] After the court denied defendant's motion for a new trial, defendant filed this appeal.

¶ 3      On appeal, defendant contends that the court erred in precluding his expert from testifying on the "ultimate issue" of the case, *i.e.*, whether his PTSD "caused" him to arm himself in his vehicle and fire his gun at McGhee's vehicle. Defendant further contends that the court erred in "substituting" its own lay opinion for that of the expert testimony on whether his conduct was consistent with his PTSD and that the court erred in failing to consider evidence that defendant subjectively believed that he was in imminent danger during the incident with McGhee. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                         I. BACKGROUND

¶ 5                          A. Pretrial

---

[1] The State nol-prossed the AUUW charges before trial.

¶ 6    Prior to trial, in response to the State's charges, defendant raised self-defense as an affirmative defense. Defendant identified Dr. Joan Anzia as a potential witness and indicated that defendant had already turned over Dr. Anzia's written expert opinion in discovery. The State filed a motion *in limine* to bar defendant's use of psychiatric evidence or opinion testimony. The State contended that because the expert was not with defendant at the time of the incident, the expert would not be able to provide an opinion as to defendant's mental state at the time. In response, defendant filed a memorandum in which he contended that his PTSD was relevant to explain his perception of the events and why he shot at McGhee's vehicle.

¶ 7    Following a hearing on the State's motion, the court found that Dr. Anzia could testify but that she would be "very limited in what [she] can say." The court found that Dr. Anzia could testify regarding the diagnosis of PTSD and how it affects someone's behavior because that knowledge was not common to the layperson. The court found that the Dr. Anzia's opinion, however, "that it was the [PTSD] that caused [defendant] to act this way" was a question for the trier of fact. "In other words, the doctor can testify *** what [PTSD] is, what affects [*sic*] it may have on an individual. That [defendant] has been evaluated, and that he suffers from [PTSD]. **** But I believe it is beyond the scope of the experts to give the opinion that in this particular instance it was the [PTSD] that caused [defendant] to act the way that he did."

¶ 8                                   B. Trial

¶ 9    At trial, both McGhee and defendant presented largely similar accounts of what occurred on June 27, 2012, with a few distinctions. McGhee was driving on Michigan City Road toward Calumet City when he stopped at a stop light and started texting on his phone. He heard several horn blasts from the vehicle behind him and realized that the light had turned green. He proceeded into the intersection, and the honking vehicle behind him driven by defendant

accelerated, went into oncoming traffic, and passed McGhee's vehicle. After defendant passed McGhee, he repeatedly applied his brakes directly in front of McGhee's vehicle, and McGhee was forced to apply his brakes to avoid rear-ending defendant's vehicle. At trial, this was referred to as "brake-checking." Defendant testified that he was brake-checking McGhee because McGhee was following him too closely and he was attempting to create some distance between their vehicles.

¶ 10    Defendant "brake-checked" McGhee four or five times, and McGhee yelled at defendant through his vehicle window. As the two vehicles neared the intersection with Pulaski Road, defendant pulled onto the shoulder of Michigan City Road. Defendant testified that as McGhee started to drive past defendant's stopped vehicle, he could not see McGhee's hands and he saw McGhee make a movement. Defendant thought McGhee might be reaching for a gun, so defendant pulled out a pistol and repeatedly fired toward McGhee, hitting his vehicle. Defendant then continued driving on Michigan City Road. McGhee attempted to follow defendant, but his vehicle had a flat tire and could not keep up with defendant. McGhee flagged down a police officer and gave him a description of defendant and the vehicle.

¶ 11    Within 30 minutes of the shots being fired, McGhee saw defendant's vehicle and pointed it out to the police officer. After police stopped the vehicle, McGhee saw a woman in the vehicle and another man who was not defendant. The following day, defendant turned himself into the police, and McGhee identified defendant in a lineup. Defendant testified that after shooting at McGhee's vehicle, he gave the gun to his mother because "[i]t felt like it was gone be [*sic*] destruction."

¶ 12    Defendant also testified extensively regarding his experiences in the military, including his two tours of combat in Iraq and his struggles since his return. Defendant testified that while

he was in Iraq, he served as a rear gunner for a convoy. It was his responsibility to protect the convoy from threats, particularly enemy vehicles. If an enemy vehicle approached the convoy, protocol mandated that defendant would first yell "stop!" at the vehicle and shine a green light at it. If the vehicle did not stop, defendant would then fire warning shots into the ground. If the vehicle ignored the warning shots, defendant would "kill" the vehicle by shooting out the vehicle's engine and tires.

¶ 13    Defendant also testified about two incidents that occurred shortly before the shooting in this case. Defendant testified that two weeks before the shooting, he was driving home when his vehicle was hit by random gunfire. A few days before the shooting, defendant was driving on 95th Street and Stony Island Avenue when he pulled up alongside another vehicle. Defendant called out to the driver of the other vehicle, and the driver pointed a gun at him. Defendant testified that he felt scared and started carrying a gun on his person after that incident.

¶ 14    Tenisha Fennie testified that she was defendant's clinical social worker and therapist from the VA program. She evaluated defendant on a few separate occasions and recommended that defendant undergo a psychiatric evaluation and attend follow-up appointments.

¶ 15    Dr. John Mundt, defendant's treating clinical psychologist from the VA, testified regarding the treatment that defendant received. Dr. Mundt believed that defendant had symptoms of PTSD and, although defendant had improved through therapy, he still needed additional treatment. Dr. Mundt testified that vehicles were a "huge stressor" for defendant given his experience in Iraq and that symptoms vary from "veteran to veteran." Dr. Mundt testified that given his relationship with defendant, he "absolutely" did not think he could be a "neutral, objective expert."

¶ 16    Defendant's retained expert, Dr. Anzia, was qualified at trial as an expert in the field of psychiatry, specifically in the diagnosis of PTSD. Dr. Anzia described the process for diagnosing PTSD, how it is defined, and what symptoms someone suffering from PTSD may present. In evaluating defendant, Dr. Anzia noted that he exhibited multiple symptoms in the "hypervigilance and hyperarousal cluster," meaning that he would set a perimeter when he was in public places and avoided public spaces. She also noted that driving and vehicles were big triggers for his PTSD.

¶ 17    Dr. Anzia testified that defendant suffered from PTSD and had a mild traumatic brain injury. Over the State's objection, Dr. Anzia testified that defendant's decision to carry a firearm in his car and the events on June 27, 2012, "were both consistent with and expectable consequences considering [defendant's] combat PTSD." Dr. Anzia testified that the incident at Stony Island Avenue a few days before the shooting in this case "ramped up" his symptoms and that is when he put a handgun in his car. After the shooting, Dr. Anzia opined that defendant experienced "dissociation" because defendant's girlfriend reported that defendant's eyes looked frozen and he was speaking like a robot. Dr. Anzia testified that during a dissociative episode, a person would have an altered mental state and not act as a reasonable person.

¶ 18    In rebuttal, the State presented the testimony of Calumet City police officer Mitch Growe who observed defendant's interview with an assistant state's attorney (ASA) at the police station. He noted that defendant never stated during the interview that he felt threatened by McGhee, that he believed McGhee had a gun, or that he could not see McGhee's hands.

¶ 19    Following closing argument, the trial court recounted the evidence presented regarding the incident on June 27, 2012. The court noted that defendant braked "very hard" in an attempt to cause McGhee to rear-end his vehicle. The court also found that McGhee's actions were

consistent with him being unarmed at the time of the incident. The court recounted defendant's testimony regarding his service in the United States military. The court found that based on Dr. Anzia's testimony, there was no doubt that defendant suffered from PTSD. The court determined that the issue presented therefore was whether defendant's PTSD prevented him from formulating a criminal intent or whether the PTSD caused him to reasonably believe that he needed to act in self defense.

¶ 20    The court found that defendant's PTSD was not a defense in this case. The court concluded that defendant voluntarily armed himself because of the two incidents he noted in his testimony and that he did not arm himself because he was "reliving events of past military service." The court also found that defendant's actions on June 27, 2012, were not consistent with his PTSD. The court noted that in Iraq defendant was responsible for keeping enemy vehicles away from the convoy. "So the question is why in the world would you brake check another vehicle to draw him closer to your car which had the potential to cause a car accident." The court found that Dr. Anzia testified that vehicles were a trigger for defendant and that based on her testimony, his hypervigilance would dictate that he would want to keep McGhee's vehicle as far away from him as possible and not draw him in by brake-checking.

¶ 21    The court found that defendant's brake-checking of McGhee was circumstantial evidence that defendant was looking for a confrontation. The court noted that defendant did not indicate that he interpreted McGhee's vehicle to be an enemy vehicle and defendant did not indicate in his statement to the ASA that he was "reliving a combat situation." The court further found that defendant's actions after the shooting were not consistent with a self-defense claim attributed to his PTSD. The court noted that the first thing defendant did when he got home after the incident

was call his mother and get rid of the gun, which the court found was evidence of consciousness of guilt.

¶ 22   The court found, however, that defendant was not guilty of attempted first degree murder because the evidence did not indicate that defendant had intent to kill. The court noted defendant's proficiency and expertise with using firearms and observed that the bullets in this case were aimed toward the front of McGhee's vehicle and the tires. Nonetheless, the court found that there was "very compelling" evidence to support the charge of aggravated discharge of a firearm and concluded that the State had proved defendant guilty of that charge beyond a reasonable doubt. The court also found that the State had proved beyond a reasonable doubt that defendant was not acting in self-defense and had no subjective belief that McGhee posed any imminent threat of use of force against defendant. The court subsequently sentenced defendant to 24 months' probation. Defendant now appeals.

¶ 23                                    II. ANALYSIS

¶ 24   On appeal, defendant contends that the court erred in precluding his expert from testifying that his PTSD "caused" him to arm himself in his vehicle and fire his gun at McGhee's vehicle. Defendant further contends that the court erred in "substituting" its own lay opinion for that of the expert testimony on the effect of his PTSD and that the court erred in failing to consider evidence that defendant subjectively believed that he was in imminent danger during the incident with McGhee.

¶ 25                              A. Standard of Review

¶ 26   Initially, defendant contends that the preclusion of Dr. Anzia's testimony regarding the ultimate issue in the case and the court's rejection of the expert's testimony is somehow accorded the *de novo* standard of review. Defendant claims that the court's ruling on this issue

was a legal error and the *de novo* standard of review applies where the issue raised is purely legal. However, it is well settled that the admission of evidence is reviewed under an abuse of discretion standard. *People v. Becker*, 239 Ill. 2d 215, 234 (2010) (citing *Snelson v. Kamm*, 204 Ill. 2d 1, 24 (2003)). This same standard applies even with regard to the trial court's decision of whether to admit expert testimony. *Id.* An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would agree with the position adopted by the trial court. *Becker*, 239 Ill. 2d at 234.

¶ 27 The remainder of defendant's contentions appear to challenge the sufficiency of the evidence presented to prove him guilty beyond a reasonable doubt and to defeat his claim of self-defense. When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, we determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard recognizes the responsibility of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony, to resolve any conflicts and inconsistencies in the evidence, and to draw reasonable inferences therefrom. *Sutherland*, 223 Ill. 2d at 242.

¶ 28                    B. Dr. Anzia's Excluded Testimony

¶ 29 Defendant first contends that the court erred in precluding Dr. Anzia from testifying on the "ultimate issue" of the case, *i.e.*, that defendant's PTSD caused him to carry a gun and to shoot at McGhee's vehicle. Defendant asserts that it is uncontested that he suffers from PTSD and that Illinois law permits experts to testify on the ultimate issue of the case. Defendant maintains that his PTSD was central to his assertion of self-defense and the trial court's decision

to restrict Dr. Anzia's testimony was a violation of defendant's constitutional due process rights. Defendant also contends that the court erred in limiting his own testimony regarding his experiences in Iraq and the circumstances that led to his PTSD.

¶ 30    Here, in limiting Dr. Anzia's testimony, the court found that it was beyond the scope of the expert to give the opinion that in this instance it was defendant's PTSD that caused him to act the way that he did. The court found that this "ultimate conclusion" would be left to the trier of fact. Defendant is correct, however, that an expert may testify to an ultimate fact or issue in the case. *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, ¶ 105 (citing *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 543 (1995)). This testimony would not impermissibly tread on the fact finder's role because the fact finder is not required to accept the expert's conclusion. *Id.*

¶ 31    Despite the trial court's ruling, however, during Dr. Anzia's testimony, defense counsel asked her about her opinions regarding the affect of defendant's PTSD. Over the State's objection, Dr. Anzia testified "that [defendant's] decision to carry a firearm in his car and the subsequent events on June 27, 2012 *** were both consistent with and expectable consequences considering [defendant's] combat PTSD." The court overruled the State's objections and stated that it would give Dr. Anzia's testimony "the appropriate weight." Dr. Anzia then testified extensively about PTSD itself, how defendant's experience in the military caused him to suffer from PTSD, and how PTSD manifests itself in certain behaviors, both in general and specifically with regard to defendant. What the court precluded Dr. Anzia from testifying about, and what defendant takes issue with here, is that defendant's PTSD caused him to carry a gun in his vehicle and caused him to shoot at McGhee's vehicle. Despite not using this exact language, however, Dr. Anzia testified that these actions were "consistent with and expectable consequences" of defendant's PTSD.

¶ 32    Later in Dr. Anzia's testimony, however, the trial court sustained the State's objection when Dr. Anzia testified to that opinion again. The court stated that Dr. Anzia could not testify as to decisions that defendant made on the night of the incident because it was outside of her expertise. The court found that defendant's intent was an "ultimate issue" for the trier of fact to determine. The court also noted that defendant had previously testified regarding why he carried the gun with him in his vehicle. We find that the court's ruling on this issue is supported by Illinois law.

¶ 33    "The question of [a] defendant's state of mind at the time of the crime [is] a question of fact to be determined by the [trier of fact]." (Internal quotation marks omitted.) *People v. Hulitt*, 361 Ill. App. 3d 634, 637-38 (2005) (quoting *People v. Raines*, 354 Ill. App. 3d 209, 220 (2004)). An expert witness who was not present with a defendant while he or she commits a crime is incapable of opining that said defendant acted with a specific mental state. See *Hulitt*, 361 Ill. App. 3d at 639 (an expert not present during the commission of a crime "would only be able to testify to an opinion formed some three years after the offense rather than from personal observation at or near the time of the offense"); *People v. Pertz*, 242 Ill. App. 3d 864, 902 (1993) (because the expert did not observe the defendant on the night of the victim's murder, "it would have been impossible for him to opine with a reasonable degree of medical and psychiatric certainty" whether the defendant acted intentionally). Rather, as the trial court found, allowing expert testimony regarding defendant's mental state at the time of the offense would "usurp[ ] the province of the [trier of fact]." *Pertz*, 242 Ill. App. 3d at 903. Therefore, although Dr. Anzia's testimony would speak directly on the question of defendant's mental state, it would "impermissibly eliminate any possibility of the [trier of fact] determining for [itself] whether defendant [acted] intentionally, knowingly, or recklessly." *Hulitt*, 361 Ill. App. 3d at 640. Thus,

while an expert may testify as to the ultimate issue in the case, as the supreme court noted in *Zavala*, our case law is clear that an expert may not testify about a defendant's mental state at the time of the offense where the expert was not present to evaluate defendant at the time or shortly thereafter. Rather, this is a question for the trier of fact, and an expert's opinion that defendant acted with a particular mental state at the time of the offense would usurp the trier of fact's role.

¶ 34    We find this court's holding in *Hulitt* relevant to our discussion here. In *Hulitt*, the trial court granted the State's motion *in limine* barring testimony from a psychologist as to the defendant's mental capacity at the time of the offense. *Id.* at 636. Defendant sought to introduce testimony from the psychologist that at the time of the offense, defendant was suffering from postpartum depression and that " 'as a result of her mental illness, she lacked the ability to cope with the stress of parenting three children and she was unable to appreciate the danger of her actions toward [the victim] on the night of the offense.' " *Id.* On appeal, the defendant contended that the court erred in excluding the psychologist's testimony regarding her mental state and the effect of her postpartum depression on her mental state. *Id.* at 637. Defendant contended that she sought to introduce the psychologist's testimony to show that she did not have the requisite intent to commit first degree murder. *Id.* This court found that the psychologist's testimony that defendant sought to introduce "sound[ed] more like a statement of diminished capacity than of recklessness." *Id.* at 640. The court held that because diminished capacity was not a defense available in Illinois, the trial court did not abuse its discretion in barring that evidence. *Id.* The court further found that because the expert had not evaluated defendant until three years after the incident, the expert would be unable to testify regarding defendant's mental state at the time of the offense. *Id.* at 639.

¶ 35    We find that the same principles apply here. Before the trial court and in his brief before this court, defendant presented his defense as a self-defense, "justification" defense. As discussed, *infra*, however, defendant's contentions fall short of establishing this defense. Rather, like the defendant in *Hulitt*, defendant's arguments here are more appropriately viewed as an attempt to assert a diminished capacity defense. Diminished capacity is an affirmative defense that permits a " 'legally sane defendant to present evidence of mental illness to negate the specific intent required to commit a particular crime.' " *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 63 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 351 (2013)); see also Black's Law Dictionary 199 (7th ed. 1999) (defining "diminished capacity" as "An impaired mental condition—short of insanity—that is caused by intoxication, trauma, or disease and that prevents the person from having the mental state necessary to be held responsible for a crime."). As this court noted in *Hulitt*, "[t]he doctrine of diminished capacity, also known as the doctrine of diminished or partial responsibility, allows a defendant to offer evidence of her mental condition in relation to her capacity to form the *mens rea* or intent required for commission of the charged offense. [Citation.]" *Hulitt*, 361 Ill. App. 3d at 640. It is well-established, however, that the affirmative defense of diminished capacity is not recognized in Illinois. *Id.* at 641.

¶ 36    Essentially, defendant contends that he sought to have Dr. Anzia testify that because he had PTSD, he could not form the necessary *mens rea* to commit aggravated discharge of a firearm, *i.e.*, his PTSD "caused" him to carry a gun and shoot at McGhee's vehicle. As noted, however, "[a]n expert may not give an opinion supporting the doctrine of diminished mental capacity because *** that doctrine is not recognized in Illinois." *Johnson*, 2018 IL App (1st) 140725, ¶ 70 (citing *Hulitt*, 361 Ill. App. 3d at 641). Thus, the court properly excluded Dr.

Anzia's testimony that defendant's PTSD "caused" him to carry a gun and shoot at McGhee's vehicle.

¶ 37    We further find that the court's ruling did not violate defendant's constitutional right to present a defense. Both defendant and Dr. Anzia testified extensively regarding his PTSD and how it affects him. Defendant also presented extensive testimony from Dr. Mundt regarding his PTSD. Defendant argues that the court improperly prevented him from adequately testifying regarding his time in Iraq and in two separate footnotes indicates that the defense prepared nearly a dozen additional exhibits and was prepared to ask defendant to describe specifically the experiences defendant had in Iraq that led to his PTSD. However, in reviewing the testimony of defendant, we observe that defendant testified extensively regarding his military training, his living conditions, his assignments in the military, and the traumatic incidents that occurred while he was deployed. Defendant testified for nearly 100 pages of trial transcript. Crucially, nowhere in defendant's testimony did he suggest that his decision to carry a gun or shoot at McGhee's vehicle were somehow related to his PTSD. Moreover, although defendant makes references to exhibits, no offer of proof was given, and as a result, we cannot say that the trial court abused its discretion limiting defendant's testimony.

> "[A] party claiming he has not been given the opportunity to prove his case must provide a reviewing court with an adequate offer of proof of what the excluded evidence would have been. [Citation.] In the absence of an offer of proof, the issue of whether evidence was improperly excluded will be deemed waived." *Chicago Park District v. Richardson*, 220 Ill. App. 3d 696, 701-02 (1991).

As discussed, *infra*, defendant's defense failed not because his or his expert's testimony was improperly limited but because he failed to sufficiently establish a legally recognizable defense

to the charged offense. As such, we find that the trial court did not abuse its discretion in limiting Dr. Anzia's testimony.

¶ 38                    C. Defendant's Claim of Self-Defense

¶ 39    Defendant next contends that the court erred in "substitut[ing]" its own opinions regarding PTSD for that of a qualified, unrebutted expert. Defendant asserts that the court's holding demonstrated its misunderstanding of how defendant's PTSD changed his perception of risk and how the court ignored the testimony of both Dr. Anzia and Dr. Mundt that defendant's actions were consistent with his PTSD. Defendant maintains that the court's "independent[ ]" determination that defendant's actions were not the result of his PTSD was reversible error where that finding was in contrast to the unrebutted expert testimony.

¶ 40    As noted, *supra*, although defendant classifies his defense as a justification self-defense defense, the essence of his defense is a diminished capacity defense. As discussed, such a defense is not recognized in Illinois. Examining defendant's defense as a justification defense, as he presented it, reveals that the trial court did not err in finding him guilty of the charged offense. In order to establish that defendant was justified in the use of force in acting in self-defense, defendant must demonstrate that (1) unlawful force was threatened against him, (2) defendant was not the initial aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) defendant subjectively believed a danger existed that required the use of force, and (6) defendant's beliefs were objectively reasonable. *People v. Lee*, 213 Ill. 2d 218, 225 (2004); see also 720 ILCS 5/7-1(a) (West 2016) ("A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force."). Once defendant raises the affirmative defense of self-defense, "the State has the burden of proving beyond a reasonable

doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *Lee*, 213 Ill. 2d at 224. If the State negates any one of the elements of defendant's claim, defendant's claim must fail. *Id.* at 225.

¶ 41 Viewing the evidence in a light most favorable to the State (*id.*), we find that the court did not err in rejecting defendant's self-defense claim. At trial, McGhee testified that defendant repeatedly brake-checked him after McGhee was inattentive at a green light. Defendant then pulled to the side of the road and shot at McGhee's vehicle. Thus, it is clear that defendant was the initial aggressor, and because the State negated one element of defendant's self-defense claim, the claim must fail. Defendant argues, however, that the court improperly accepted McGhee's definition of brake-checking, stopping the vehicle abruptly in order to cause a collision, but should have accepted defendant's definition—tapping his brakes to discourage McGhee from tailgating him. This question, however, is one of credibility of the witnesses. As noted, the credibility of the witnesses and the weight to be given their testimony is a question for the trier of fact. *Sutherland*, 223 Ill. 2d at 242. Here, defendant and McGhee gave differing descriptions of what defendant's "brake-checking" entailed. The trial court clearly accepted McGhee's definition of that term, finding that "the defendant's actions in driving his vehicle *** were not consistent with [PTSD] *** why in the world would you brake check another vehicle to draw him closer to your car which had the potential to cause a car accident. That makes no sense to me." On review, we will not substitute our judgment for that of the trier of fact where the evidence is merely conflicting. *People v. Columbo*, 118 Ill. App. 3d 882, 979-80 (1983) (citing *People v. Manion*, 67 Ill. 2d 564, 578 (1977), and *People v. Foster*, 76 Ill. 2d 365, 373 (1979)).

¶ 42 Defendant contends, however, that because of his PTSD, he subjectively believed that McGhee was reaching for a gun and acted in self-defense when he shot at McGhee's vehicle. As

discussed, however, defendant's subjective belief that force was necessary is just one of the elements of his self-defense claim. The court's finding that defendant was the initial aggressor was sufficient to defeat his claim. In addition, defendant initially testified that he believed McGhee had a weapon because he could not see his hands and McGhee "made a move." Defendant later testified, however, in response to the court's own questioning, that as McGhee drove past him while defendant was stopped on the side of the road, he saw McGhee had one hand on his steering wheel and his head and other arm were hanging outside of his driver's side window. This again raises a credibility determination as to whether defendant subjectively believed that he was in danger and required to use force that was within the prerogative of the trier of fact to resolve. *Sutherland*, 223 Ill. 2d at 242. The court's ruling suggests that it did not accept defendant's testimony that he believed McGhee was reaching for a gun because he could not see his hands. The court found that McGhee's actions were consistent with him being unarmed, and we will not substitute our judgment for that of the trier of fact unless the proof is so unsatisfactory that a reasonable doubt of guilt appears. *People v. Berland*, 74 Ill. 2d 286, 305-06 (1978). We do not find this to be such a case.

¶ 43    Defendant maintains, however, that the court improperly believed that in order for defendant's PTSD to be a factor in the incident, defendant must have believed that he was transported back to Iraq and was "reliving" the experience. Defendant also asserts that the court misunderstood Dr. Anzia's explanation of defendant's "hypervigilance" and mistakenly found that defendant's actions after the shooting were indicative of guilt despite Dr. Anzia's testimony that defendant was in a dissociative episode.

¶ 44    Defendant is correct that the court found that defendant had armed himself on the night of the incident because of the incident a few days before the shooting where a person pointed a

gun at defendant and not because he was "reliving events of past military service." The court further noted that defendant did not tell the ASA in his statement that he was "reliving a combat situation." In finding defendant guilty of aggravated discharge of a firearm, however, the court found that defendant's self-defense claim must fail because the state adequately proved that defendant did not subjectively believe that McGhee posed any imminent threat of force against him. The court's comments regarding defendant's PTSD thus illustrate its disbelief of defendant's testimony that he was not the initial aggressor and that he believed McGhee had a gun. As noted, the trial court was not required to accept defendant's and Dr. Anzia's explanations for the events. Indeed, in denying defendant's motion for a new trial, the court noted that it viewed defendant's actions as a "case of road rage" and recognized that it was "allowed to dismiss Dr. Anzia's evidence and testimony in this case." The court did not believe that defendant's PTSD was at all relevant to his actions.

¶ 45     In essence, the question before the trial court was whose version of the events was more credible. Defendant attempts to frame the issue as whether or not his PTSD "caused" him to arm himself and shoot at McGhee; however, this again resembles a diminished capacity defense, which is not recognized in Illinois. Essentially, the court credited McGhee's testimony that defendant was the initial aggressor and that McGhee was unarmed. The court found that defendant's actions were not consistent with his PTSD, that defendant was the initial aggressor, and that defendant did not subjectively believe that he needed to use force to protect himself from an imminent threat of force. Accordingly, the court found that defendant's self-defense claim must fail. We find no basis to disturb that ruling and accordingly affirm the judgment of the trial court.

¶ 46                                III. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 48    Affirmed.

---

**No. 1-17-2250**

---

| | |
|---|---|
| **Cite as:** | *People v. Frazier*, 2019 IL App (1st) 172250 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12C6-60795; the Hon. Allen Murphy, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael A. Scodro, Marc R. Kadish, Vincent Connelly, Natalie Kissinger, and Chandra Critchelow, of Mayer Brown LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |

---