**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180240-U

Order filed May 5, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0240 Circuit No. 12-CF-763 |
| | ) | |
| SHAWN T. BLOCK, | ) ) | Honorable Richard A. Zimmer |
| Defendant-Appellant. | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Daugherity and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   Trial court did not err when it found defendant was not prejudiced by counsel's deficient performance regarding sentencing. Counsel did not provide ineffective assistance regarding the admission of text messages and other-crimes evidence.

¶ 2    Defendant Shawn T. Block was convicted of two counts of predatory criminal sexual assault of a child following a bench trial and sentenced to two consecutive 22-year terms of imprisonment. This court affirmed his conviction and sentence on appeal. Defendant filed a

postconviction petition, which proceeded to a third-stage evidentiary hearing. Following the hearing, the trial court denied the petition and dismissed it. Defendant appealed. We affirm.

¶ 3                                    BACKGROUND

¶ 4        Defendant Shawn T. Block was charged with two counts of predatory criminal sexual assault of a child on an accountability theory. 720 ILCS 5/11-1.40(a)(1), 5-2 (West 2012). The charges arose from incidents in which defendant encouraged his girlfriend, Randi Hayes-Manske, to engage in sexual acts with her then six-year-old son, R.C., and incidents in which he also engaged, for his sexual gratification.

¶ 5        Defendant was arrested and a bond hearing took place. Joshua Allen, an investigator with the East Moline Police Department, testified and explained a search warrant was executed on defendant's cell phone carrier for his phone records. The pretrial proceedings also included plea negotiations with the State. The offers included sentences ranging from 50 years to 12 years. Defendant rejected the offers and the State retracted one.

¶ 6        A bench trial took place. The trial court found defendant guilty on both counts, relying in substantial part on text messages exchanged between defendant and Hayes-Manske as evidence of guilt. The text messages were sent between defendant and Hayes-Manske from June 1, 2012, to September 7, 2012. They revealed an escalating pattern of defendant grooming Hayes-Manske and R.C. for his sexual gratification. The messages also included defendant's admissions of other uncharged acts, including that he engaged in group sex and bestiality, viewed child pornography, and masturbated in the presence of his young daughter. The text messages were admitted into evidence without objection by defense counsel, who stated that the defense had received the text messages in discovery. The trial court addressed defendant and explained that if there had been

2

objections to the text messages, his attorney would have made them before that point in the proceedings.

¶ 7        A sentencing hearing ensued. The trial court stated defendant faced mandatory consecutive sentences of 6 to 30 years' imprisonment on each count, with which the State and defense counsel agreed. The court imposed 22-year terms of imprisonment on each count for a total sentence of 44 years. Defendant moved for reconsideration of his sentence. The court heard the motion and denied it. The court stated that it would have accepted a plea deal like those offered by the State had defendant pleaded guilty and expressed remorse.

¶ 8        Defendant appealed. He argued that the State did not prove him guilty beyond a reasonable doubt, the trial court erred when it prevented defense counsel from objecting to the text messages, and the State's evidence was constitutionally defective. *People v. Block*, 2016 IL App (3d) 140694-U. This court denied his claims, while observing that the trial court and parties incorrectly believed at trial and on appeal that defendant faced a 6- to 30-year prison sentence when the actual sentencing range was 6 to 60 years for each count. See 720 ILCS 5/11-1.40(b)(1) (West 2012). The court found that counsel performed deficiently in not knowing the applicable sentencing range, but that defendant was not prejudiced by counsel's deficient performance.

¶ 9        Defendant filed a postconviction petition in which he argued that his constitutional right to effective assistance of counsel was denied to him at trial. Specifically, defendant argued that trial counsel was ineffective for failing to object to the admission of the text messages and prior bad-acts evidence, and for incorrectly advising him about the applicable sentencing range. He further argued that the court's finding of no prejudice was not supported by the evidence.

¶ 10        A third-stage evidentiary hearing took place. Trial counsel Eric Mail testified. The State first offered a 20-year, Class X, sentence in exchange for a guilty plea. The State then offered a

3

15-year, Class 1, sentence in exchange for a guilty plea. Mail stated he would not have recommended his client agree to the 15-year sentence. His practice was to not recommend one way or the other. He was not sure whether he knew at the time defendant was sentenced if the sentencing range was a maximum of 30 years on each count or that the range was 6 to 60 years for each count. He did not object to admission of the text messages, or object or seek to suppress evidence regarding defendant's prior bad acts. He was aware from the bond proceeding that the State was able to provide a foundation for the text messages and he had no basis to challenge their admission. He did not object to evidence regarding defendant's prior bad acts as part of trial strategy and because the evidence was admissible to show motive or intent.

¶ 11    Defendant testified. The first offer from the State was made around the time Mail was hired and was for 50 years. Mail said the offer was "ridiculous" and "not worth entertaining." Defendant agreed. The next offer was for 20 years for a Class X. Mail again said the offer was "ridiculous" and "not worth entertaining" to which defendant agreed. He was more receptive to an offer of a sentence in the four, five, six-year range, which was aligned with time served. According to Mail, the offer with a 12-year cap was never actually on the table, but it was revoked before defendant could accept it. The State's next offer was 20 years; Mail said it was a 15-year offer, which it could have been. defendant rejected it.

¶ 12    Mail did not make any recommendations regarding the offers except for calling them "ridiculous" and "not worth entertaining." defendant was "in complete agreement" with Mail's assessment. Defendant told Mail "all along" that he "did not want to plead to anything that [he] didn't do." He opted to proceed with a trial rather than plead guilty based on Mail's advice that even if he lost at trial, the sentence would be in the 15-year range. Defendant reasoned he "might as well go to trial to try to proclaim [his] innocence."

4

¶ 13        Defendant further testified that counsel advised him that the maximum sentencing range if convicted was 12 to 30 years for each count. He was aware he faced a 12- to 60-year sentence. If counsel had correctly advised him of the sentencing range, he would have taken a plea. Defendant admitted that Mail informed him that the sentences would be mandatory consecutive sentence, but said, "he kind of waived [*sic*] it off, that the upper range wasn't even applicable." Mail also told him that a bench trial would be in defendant's favor because both Mail and defendant had a rapport with the trial judge. Defendant further testified that at the sentencing hearing, he and counsel thought his maximum sentence would be 60 years, not 120 years. If he had known the full range, he would not have gone to trial with the possibility of a *de facto* life sentence. He would have taken a plea.

¶ 14        Following the close of evidence, the trial court found defendant's claims were without merit, except for the claim regarding counsel's advice about the sentencing ranges. The court considered that defendant demonstrated counsel's performance was deficient but found that defendant did not show he was prejudiced by counsel's deficient performance. The trial court denied defendant's postconviction petition. Defendant appealed.

¶ 15                                ANALYSIS

¶ 16        On appeal, defendant raises three arguments. He challenges the trial court's finding that he was not prejudiced by counsel's inaccurate advice regarding the applicable sentencing ranges and argues that he received ineffective assistance of counsel based on counsel's failure to object to the admission of text messages and other-crimes evidence.

¶ 17        The first issue we address is defendant's argument that the postconviction court erred in finding he was not prejudiced by counsel's deficient performance. He argues that the trial court misconstrued his testimony about the pleas and misunderstood the quantum of prejudice needed

to sustain an ineffective assistance claim based on plea negotiations. According to defendant, he established that, but for counsel's incorrect sentencing advice, he would have accepted a plea offer.

¶ 18 A defendant has a constitutional right to effective assistance of counsel. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. A defendant's sixth amendment right to effective counsel applies to plea bargaining. *People v. Hale*, 2013 IL 113140, ¶ 15. A defendant has the right to reject a plea offer but his decision must be knowingly made after being fully and fairly informed of the plea consequences. *People v. Blommaert*, 237 Ill. App. 3d 811, 816-17 (1992). To establish ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and the deficient performance prejudiced him such that, but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We review claims of ineffective assistance that were not raised in the trial court *de novo*. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 46, *aff'd as modified*, 2019 IL 124143.

¶ 19 The Post-Conviction Hearing Act allows an inmate to claim he was denied a substantial constitutional right in the proceeding that resulted in his conviction. 725 ILCS 5/122-1 *et seq.* (West 2018); *People v. Custer*, 2019 IL 123339, ¶ 29. At the third stage of postconviction proceedings, the court conducts an evidentiary hearing on the petition. 725 ILCS 5/122-6 (West 2018); *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 20. The defendant has the burden to demonstrate the constitutional deprivation. *Id.* ¶ 21. This court will not reverse a determination made on a postconviction petition unless it was manifestly erroneous. *People v. Beaman*, 229 Ill. 2d 56, 72 (2008).

¶ 20 Defendant maintains that his decision to proceed with a trial rather than accept a plea offer was based on the incorrect sentencing information he received from counsel. He says counsel told

him he would face the same 15-year sentence at trial or in a plea. He also submits that counsel's inaccurate advice regarding the sentencing range contributed to his decision not to plead guilty. The record contradicts defendant's assertions. He was offered several pleas. He described them as offers with sentences of 50 years, 20 years, 15 years and 12 years. Defendant rejected the 50- and 20-year offers, testifying that both he and his attorney considered the offers to be "ridiculous" and "not worth entertaining." Defendant said the 12-year offer, which was ultimately revoked, was available for "some period of time," during which he did not accept it. Although he might have considered an offer with a term of imprisonment aligned with the time he had spent in pretrial custody, no such offer was presented or likely under the circumstances.

¶ 21        Mail testified that the offers included 20 years without a cap, in which defendant was not interested. To the best of his recollection, there was an offer of a Class 1 with a cap of 12 years, which was "somewhat attractive" and "had been considered." Defendant did not accept the 12-year offer but "he got to a point where he wished to proceed" before the State retracted the offer. The State thereafter offered a firm 15-year sentence. Defendant rejected that offer immediately prior to trial. Mail said at that point, he "would not have recommended [defendant] necessarily agree to 15 years" because they were ready for trial.

¶ 22        Defendant submits that counsel's misrepresentations informed his plea decisions. He argues that he rejected all of the offers based on incorrect advice from counsel, and had counsel told him the correct sentencing range, he would have accepted a plea. He says counsel told him the upper range of the possible sentences did not apply, waved off the mandated consecutive terms requirement, and characterized the plea offers as "ridiculous." Defendant maintains that he was not aware the actual sentencing range was 12 to 120 years, which he called a *de facto* life sentence, not the 12 to 60 range counsel explained to him.

¶ 23    Defendant's claims do not persuade us. In hindsight, defendant finds the plea offers inviting. Yet, when he believed the sentencing range was 12 to 60 years, he did not accept low-range plea offers. He described that a 12-year offer was available for "some period of time," but did not take any action to accept it. His rejection of, or failure to accept, these offers corresponds with his assertion that he did not do anything wrong and was not going to plead guilty. When he rejected the State's offers, defendant knew he was facing mandatory sentences ranging from 12 to 60 years, to be served at 85% of the sentence. Significantly, defendant said he informed defense counsel "all along" that he "would not plead to what he did not do." We consider this reason the likely explanation for defendant's decision to go to trial.

¶ 24    Although defendant submits that he relied on counsel's suggestion that the upper end of the range did not apply under the facts of his case, counsel testified that he did not make any prediction as to what sentence the court would impose. Defense counsel denied that he advised defendant that he would likely receive a 15-year sentence if he went to trial. Counsel explained that his practice was to inform his client regarding the available options, which he did for defendant. Defense counsel, the State, and the court all were under the impression the top end of the range was 60 years. This error inured to defendant's benefit. As it stands, the court sentenced him in the low range of the stated 60-year sentence he faced, and had the court been aware the range was 120 years, a low-range sentence would have looked considerably longer. We agree with the trial court and find that defendant was not prejudiced by defense counsel's deficient performance. Thus, his claim of ineffective assistance must fail. We find the trial court did not err in denying his postconviction petition on this ground.

¶ 25    The second issue is whether defendant received ineffective assistance of trial counsel where counsel failed to object to the admission of text messages. Defendant argues the text

8

messages lacked a proper foundation and trial counsel was ineffective for failing to object to their admission. He claims there was no evidence he wrote the texts received by Hayes-Manske or that the phone number to which she sent the texts belonged to him.

¶ 26    The State contends that this issue is forfeited for defendant's failure to raise it on direct appeal. Postconviction proceedings permit the court to consider constitutional issues that were not and could have been raised on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. Issues that could have been raised on direct appeal but were not raised are considered forfeited in postconviction proceedings. *People v. Williams*, 209 Ill. 2d 227, 233 (2004). Forfeiture is relaxed where (1) fundamental fairness requires, (2) the forfeiture resulted from ineffective assistance of appellate counsel, or (3) the facts related to the claim do not appear on the face of the original appellate record. *English*, 2013 IL 112890, ¶ 22.

¶ 27    Trial counsel's failure to object to the admission of the text messages was an issue that could have been raised on direct appeal but was not. Thus, we find it is forfeited and that none of the exceptions to forfeiture apply. The admission of the text messages was not fundamentally unfair. The messages were not improperly admitted; thus, appellate counsel was not ineffective for failing to challenge their admission on direct appeal. The facts regarding the texts appear on the face of the appellate record.

¶ 28    Forfeiture notwithstanding, defendant's claim of ineffective assistance is without merit. A defendant received ineffective assistance where counsel's performance falls below an objective standard of reasonableness and the deficient performance prejudices him. *Strickland*, 466 U.S. at 687. Generally, matters of trial strategy are immune from ineffective assistance of counsel claims. *People v. Manning*, 241 Ill. 2d 319, 327 (2011) (citing *People v. Smith*, 195 Ill. 2d 179, 188 (2000)). " '[A] reviewing court must indulge in a strong presumption that counsel's conduct fell

9

into a wide range of reasonable representation, and the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " (Internal quotation marks omitted.) *People v. Jones*, 2012 IL App (2d) 110346, ¶ 82 (quoting *People v. Bryant*, 391 Ill. App. 3d 228, 238 (2009)). A defendant may overcome the presumption of sound trial strategy where counsel's "decision appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *Id.* We review *de novo* claims of ineffective assistance of counsel that were not raised in the trial court. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24.

¶ 29    Documentary evidence is authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ill. R. Evid. 901(a) (eff. Jan. 1, 2011). A proper foundation for documentary evidence, such as text messages, is laid when the document is identified and authenticated. *People v. Ziemba*, 2018 IL App (2d) 170048, ¶ 51. A document is authenticated when the proponent presents evidence demonstrating the document is what he purports it to be. *Id.* The trial court performs a screening function to determine if the evidence of authentication would allow the jury to find the evidence is more probably true than not, and once admitted, the factfinder determines authorship. *Id.*

¶ 30    Direct or circumstantial evidence may authenticate a document. *People v. Downin*, 357 Ill. App. 3d 193, 203 (2005). Circumstantial evidence may include appearance, contents and substance. *Id. Prima facie* authorship is established with a showing that the writing contains knowledge of matters of a nature that would be known only by the authors or a small number of individuals. *Id.* This court reviews a trial court's determination on the admission of evidence for an abuse of discretion. *People v. Frazier*, 2019 IL App (1st) 172250, ¶ 26. We will not disturb a

trial court's denial of a postconviction petition after a third-stage evidentiary hearing unless it was manifestly erroneous. *People v. Crenshaw*, 2012 IL App (4th) 110202, ¶ 12.

¶ 31        The record establishes that the State offered evidence sufficient to establish a foundation for the text messages. At the bond hearing, Allen, the investigator with the East Moline Police Department, testified that he caused a search warrant to be executed for defendant's cell phone records. In response to the warrant, defendant's cell phone carrier turned over the records, including text messages, for the period from June 1, 2012, to September 7, 2012. The officer identified defendant's cell phone number and Hayes-Manske's cell phone number from the cell phone records. He also attested in an affidavit attached to his application for a search warrant that defendant admitted to him that defendant's cell phone number was the number to which the texts were sent. At trial, Hayes-Manske testified that she did not recognize defendant's phone number, but she recognized the texts as conversations between herself and defendant. She remembered the text conversations and was familiar with defendant's texting style. She stated that the cell phone records fairly and accurately depicted the text message conversations between herself and defendant. At the hearing on defendant's postconviction petition, defense counsel testified that he was aware from prior proceedings that the State could offer a foundation for the records. In counsel's opinion, he had no basis to object to their admission and that any objection would be pointless as the messages were discovered in Hayes-Manske's and the defendant's phones.

¶ 32        We find the text messages were properly authenticated as conversations between defendant and Hayes-Manske discussing conduct on which the charges against defendant were based as the State purported the messages to be. Both Hayes-Manske and defendant identified his cell phone number. Hayes-Manske testified the appearance, contents and substance of the messages aligned with text conversations between herself and defendant. She recalled the conversations and was

11

familiar with defendant's texting style. Counsel was aware the State could present a foundation and did not object on that basis. We find trial counsel was not ineffective for failing to object to their admission. See *People v. Clinton*, 2016 IL App (3d) 130737, ¶ 39 ("It is not constitutionally deficient for trial counsel to decline to bring a fruitless motion."). We further find the postconviction court's denial of defendant's postconviction petition on this issue was not manifestly erroneous. *People v. Beaman*, 229 Ill. 2d 56, 72 (2008) ("[f]ollowing an evidentiary hearing where fact-finding and credibility determinations are involved, the trial court's decision will not be reversed unless it is manifestly erroneous").

¶ 33　　　　The third issue is whether defendant received ineffective assistance of trial counsel where counsel failed to object to the admission of other-crimes evidence. Defendant argues counsel was ineffective for failing to object to evidence of prior bad acts he allegedly committed, claiming their admission prejudiced him.

¶ 34　　　　Evidence of other crimes is not admissible to show the defendant's propensity to commit crimes. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). The evidence may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" as to the crime for which he was charged. *Id.* Before admitting other-crimes evidence, the trial court must weigh the probative value of the evidence against its prejudicial effect on the defendant and exclude it when the prejudice outweighs the probative value. *People v. Lewis*, 2015 IL App (1st) 130171, ¶ 47. This court reviews the admission of other-crimes evidence for an abuse of discretion. *People v. Gonzalez*, 379 Ill. App. 3d 941, 948-49 (2008). Claims of ineffective assistance are reviewed to determine whether counsel's performance was deficient and prejudiced the defendant. *People v. Albanese*, 125 Ill. 2d 100, 106 (1988). A trial court's denial of a postconviction petition

12

after a third-stage evidentiary hearing is not disturbed unless manifestly erroneous. *Crenshaw*, 2012 IL App (4th) 110202, ¶ 12.

¶ 35    The State maintains defendant also forfeited this issue by failing to raise it on direct appeal. The State is correct. The admission of other-crimes or bad-acts evidence which defendant challenges was known to him at the time of his direct appeal. He had the opportunity to raise the issue at that time. He does not assert ineffective assistance of appellate counsel. The facts necessary to raise the claim were apparent on the fact of the appellate record. We find this issue is forfeited, and forfeiture aside, the issue lacks merit.

¶ 36    The text messages included statements by defendant that he engaged in bestiality and group sex, watched child pornography, and masturbated in front of his daughter. He claims that the admission of these messages resulted in the verdict against him based on the improper other-crimes evidence. Defense counsel did not object to admission of the evidence. At the postconviction hearing, counsel testified he did not object because the evidence was admissible. The State was presenting the evidence to show defendant's motive, plan or intention, not for the truth of the statements themselves. Mail also testified that trial strategy included characterizing the text messages as part of defendant's sexual fantasies, which Hayes-Manske then put into action on her own. Counsel explained that his reasoning was to allow the other-crimes evidence and then show most of them did not take place, which supported the fantasy trial strategy. Trial strategy, even when unsuccessful, does not constitute ineffective assistance. We find that counsel was not ineffective for failing to object to admission of other-crimes evidence and that the postconviction court did not err in denying the petition.

¶ 37                                            CONCLUSION

13

¶ 38    For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

¶ 39    Affirmed.