2021 IL App (2d) 200332-U
No. 2-20-0332
Order filed July 26, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-2395 |
| PATRICK WILLIAMS, | ) ) ) | Honorable Donald J. Tegeler, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Bridges and Justice Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's judgment is affirmed, where defendant failed to present a sufficiently complete record on appeal to facilitate review of the issues.

¶ 2   After a jury trial, defendant, Patrick Williams, was found guilty of two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2018)) and one count of unlawful restraint (720 ILCS 5/10-3 (West 2018)).  The trial court sentenced him to four years' imprisonment and denied his posttrial motion.  Defendant appeals, arguing that he was denied his right to a fair trial and to present a complete defense, where (1) the court limited defense counsel's cross-examination of the victim about a notarized document allegedly bearing her signature and containing prior

inconsistent statements (defendant's exhibit No. 1); (2) the document was admissible as a prior inconsistent statement, even though the victim did not recognize it, because it contained on its face sufficient indicia of its authenticity; and (3) defense counsel provided ineffective assistance by not arguing to the court that the notarized document was sufficiently authentic to be introduced as evidence, and, alternatively, counsel should have requested a continuance to call witnesses who could further authenticate the document. Defendant requests that we vacate his convictions and remand for a new trial, or, alternatively, remand for a hearing on the document's authenticity.

¶ 3    The State initially responds that the record is insufficient to review defendant's issues, as the exhibit used at trial is not contained in the appellate record and its contents, including whether it includes inconsistent statements, are unknown. We agree with the State, and, therefore, we affirm.

¶ 4                                  I. BACKGROUND

¶ 5    Defendant was charged with one count of home invasion, two counts of aggravated domestic battery, two counts of domestic battery, and one count of unlawful restraint. An Aurora police report stated that, on November 27, 2019, Jenessa Zapata was in her home and heard a knock at her front door. She opened the door and observed defendant, who pushed his way into her apartment. The two had been dating since September 2019. Defendant grabbed Zapata by the hair, dragged her into a bedroom, and punched and slapped her multiple times. He also got on top of her and began to strangle her to the point where she lost consciousness. At some point, defendant left the apartment, and Zapata called her mother for help. Zapata went to the hospital. She sustained injuries to her eyes and had bruises on her face and neck.

¶ 6                                A. Pretrial Proceedings

¶ 7       On February 18, 2020, six days before trial commenced, the State moved *in limine* to bar evidence concerning a notarized written statement purportedly written by Zapata (*i.e.*, defendant's exhibit No. 1).  The State asserted that it had learned that defense counsel had received a written statement that was left, after hours, at the Public Defender's office.  Defense counsel, according to the State, had stated that she was not aware who dropped off the letter or if Zapata wrote it.  The State noted that the statement was stamped by a notary.  It also noted that it anticipated that the defense would cross-examine Zapata with the written statement and impeach her testimony with it.  The State asserted that it did not have any information that the notary public was available for the trial or any statements she had made to the defense.  It sought to bar the defense from eliciting any testimony, introducing any evidence, or making any argument to the jury regarding the statement "without more information."  (There is no copy of the statement—defendant's exhibit No. 1—in the appellate record.)

¶ 8       At a February 20, 2020, hearing, the State asked that, if the notarized statement was brought up at trial, it be done so outside the jury's presence, such as at an acknowledgement hearing. Defense counsel was unaware if there was a video showing who left the statement at the Public Defender's officer and stated that she had not subpoenaed the notary public.  She argued,

> "But there are a lot of indicia of reliability within that document.  First that is a real notary.  I looked it up.  She's a real notary in Illinois.  And then the phone number listed on that is the phone number that [Zapata] gave to the detective on the case *** which corroborates the fact that it's hers.  *I don't know for sure it's hers.  I'm speculating it's from her.*"  (Emphasis added.)

¶ 9       The trial court denied the State's motion, noting that, if defense counsel wanted to present the statement without confirming with Zapata that she wrote it,

"I suppose that's on them. I mean, obviously this is not going—if the foundation is not laid, it's not going to be given to the jury. I suppose I could—If you're asking me are they allowed to approach with a document and say did you write this document, if she says no, they got some issues.

I suppose they can ask in this document is this your phone number, I'll allow that. And maybe some other identifying things to help her remember that she might have written it. But the document is not going to be read out in court unless she acknowledges it's hers at which point you just admitted."

¶ 10 The court reiterated that the jury would not learn the contents of the statement unless it was admitted into evidence. Further,

"They can ask does it have your signature. I will allow them to ask is this your signature, is this your notarized signature and is this your phone number. I'm going to allow them to ask that because I think that's identifying. If she says oh, yeah, it is mine, I did write this, I suppose they could also ask her to read it silently. I'm not telling you how to try the case but I'm telling you what my ruling would be most likely. Read it silently. I mean, there is an IPI instruction that she adopts it. Then she can read it silently and say yes, I do adopt this as my statement, although I didn't write it. At which point it would come in. There are ways to get it in but you're going to have to lay the foundation before the jury ever sees this or it's published to the jury."

¶ 11                                    B. Trial

¶ 12 Trial occurred on February 24 and 25, 2020. During defense counsel's cross-examination of Zapata, counsel showed Zapata defendant's exhibit No. 1 and asked her if she recognized the document. Zapata replied "No." Over objection, counsel also asked if there was a notary signature

at the bottom of the document, and Zapata replied, "Yes." Again over objection, counsel asked if Zapata saw a phone number on the document. She replied that she did.

¶ 13 Next, the court sustained the State's objection to the question whether Zapata recognized the phone number. However, the witness answered the question, replying in the affirmative, and, pursuant to the State's request, the court instructed the jury to disregard Zapata's answer. Counsel then asked, over the State's objection, if Zapata recognized the document, and she replied, "No." Counsel went on to another topic.

¶ 14 Defendant's exhibit No. 1 was neither offered nor admitted into evidence, and no offer of proof was made as to the contents of the document.

¶ 15                                C. Posttrial Proceedings

¶ 16 On February 28, 2020, three days after the jury rendered its verdict, defendant mailed to the court a document containing a purported notarized statement by Zapata.[1] There is no indication in the filing that this statement is identical to the statement defendant sought to introduce at trial (*i.e.*, defendant's exhibit No. 1), which, again, is not contained in the record on appeal. The mailed statement is dated December 9, 2019, and the notarization date is illegible. The salutation reads "To whom it may concern," and the (handwritten) body reads:

---

[1] The sender's address reflects that it came from the Kane County jail (and is marked as "Legal Mail"), and it included a letter, purportedly signed by defendant and dated February 21, stating, "I need to have this *affidavit* from the witness, filed in the courts please," and "And can you also send me a filed copy back." (Emphasis in original.) The letter references case No. 19-CF-2395.

"I Jenessa Zapata am writing this affidavit to explain what occurred on the day in question between [defendant] [and] in the statement that I[']ve read a lot wasn't accurate. First[,] let me start by saying [defendant] resides in my resident [*sic*] [and] what began this disagreement was I was on my phone with my ex[.] [A]n argument ensued[.] Alcohol played a major part in what occurred on this day. I[']m not down playing anything in this situation[.] [T]he fact of the matter is we were both physical with each other[.] [N]o[,] [defendant] did not force his way in somewhere he resides or w[h]ere he lives [and] I[']m just being honest like I said before he resides with me an[d] his belongings are in my home. I can admit things did get out of hand [and] went to[o] far. On another note[,] [defendant and] I are going to be together [and] want things out [and] I apologize for any inconvenience that I have caused the Courts[,] Judge[,] [and] anybody else. Should you have any other questions[,] I may be contacted at (630) [ ]."

¶ 17    Defendant moved for judgment notwithstanding the verdict or a new trial, arguing that Zapata's credibility was impeached many times throughout her testimony and, thus, the evidence was insufficient to sustain the guilty findings. He also argued that the trial court had erred in limiting defense counsel to asking only two questions about defendant's exhibit No. 1.

¶ 18    A March 4, 2020, order states that the court had tendered to the State and defense counsel (unspecified) correspondence from Zapata. At a hearing that day, the court noted that it received a notarized statement from Zapata, "basically exonerating [defendant] of any criminal activity[.]" The court tendered copies to the parties and instructed the clerk to file the original. "I'll let you guys determine what if anything should be done." During this hearing, no reference was made to defendant's exhibit No. 1.

¶ 19    On May 8, 2020, the trial court denied defendant's motion for a new trial, and, on June 12, 2020, it denied defendant's motion to reconsider sentence.

¶ 20                         D. Motions in this Court

¶ 21    Defendant appealed, arguing in his appellant's brief that he was denied his right to a fair trial and to present a complete defense due to the trial court's and defense counsel's missteps concerning defendant's exhibit No. 1.  In its appellee's brief, the State first argued that the record on appeal was insufficient to review these issues, as defendant's exhibit No. 1 is not included in the record on appeal and its contents are unknown.

¶ 22    Defendant moved in this court to supplement the record on appeal, asserting that, upon review of the State's appellee's brief, appellate counsel determined that she needed to confirm that the affidavit document defendant sent from the jail was the same affidavit that defense counsel tried to introduce at trial as defendant's exhibit No. 1.  Appellate counsel asserted that she obtained from defense counsel a copy of defendant's exhibit No. 1 and, upon her review, determined that it was identical to the affidavit defendant mailed from the jail after trial.  Appellate counsel argued that, in order to provide a complete record for consideration of the issues in this appeal, she sought to add the document used as defendant's exhibit No. 1.

¶ 23    The State objected to appellate counsel's motion, arguing that it would be prejudiced at the late date if defendant was allowed to supplement the record and asserted that defendant had not provided justification for the delay in moving to supplement the record.

¶ 24    On June 10, 2021, this court denied, as untimely, defendant's motion to supplement the record.  We also subsequently denied defendant's motion to reconsider.

¶ 25                              II. ANALYSIS

¶ 26 Defendant argues that he was denied his right to a fair trial and to present a complete defense, where (1) the trial court limited defense counsel's cross-examination of Zapata about defendant's exhibit No. 1—a notarized document allegedly bearing the signature "Jenessa Zapata" and containing prior inconsistent statements; (2) the document was admissible as a prior inconsistent statement, even though Zapata did not recognize it, because it contained on its face sufficient indicia of its authenticity; and (3) defense counsel provided ineffective assistance by not arguing to the court that the notarized document was sufficiently authentic to be introduced as evidence, and, alternatively, counsel should have requested a continuance to call witnesses who could provide further authentication for the document. Defendant requests that we vacate his convictions and remand for a new trial, or, alternatively, remand for a hearing on the document's authenticity.

¶ 27 As noted, the State initially responds that the record is insufficient to review defendant's issues, as defendant's exhibit No. 1 is not contained in the appellate record and its contents, including whether it includes inconsistent statements, are unknown. For the following reasons, we agree with the State.

¶ 28 Our review of this appeal is hampered by an incomplete record. Defendant has the burden to present sufficiently complete record to support his claims on appeal, and, absent such a record, we presume the trial court's order conformed with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 29    Again, defendant's exhibit No. 1 is not contained in the record on appeal.  The exhibit was never offered or admitted into evidence.  Further, defense counsel did not make any offer of proof as to its contents and the document was not filed with the court clerk.  See *People v. Frazier*, 2019 IL App (1st) 172250, ¶ 37 (trial court did not abuse its discretion in limiting the defendant's testimony, where the defendant failed to make an offer of proof as to various exhibits).

¶ 30    The only citations in defendant's briefs to any alleged affidavit by Zapata are to the document defendant sent from the jail.  However, with the exception of appellate counsel's assertion in her motion to this court, which we denied as untimely, there is no indication that this document is identical to defendant's exhibit No. 1.

¶ 31    The question remains, therefore, whether the statements in defendant's exhibit No. 1 are inconsistent with Zapata's trial testimony.  The assertion that they are inconsistent is central to all of the issues defendant raises in this appeal.  Because we do not have the document to verify whether this is so, we cannot assess the merits of defendant's claims.  *Foutch*, 99 Ill. 2d at 395 ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.")

¶ 32                                III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 34    Affirmed.