THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CALANDRA HULITT, Defendant-Appellant.

First District (3rd Division)   No. 1—04—0291

Opinion filed October 26, 2005.—Rehearing denied December 2, 2005.

Michael J. Pelletier and Robert Hirschhorn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Peter D. Fischer, and Andrew Vrabel, Assistant State's Attorneys, of counsel), for the People.

JUSTICE KARNEZIS delivered the opinion of the court:

After a jury found defendant Calandra Hulitt guilty of the first degree murder of her daughter Moneka Powell, the circuit court sentenced her to 30 years' imprisonment. The court denied defendant's posttrial motion for a new trial and defendant appeals, arguing that the court erred in barring defendant from presenting expert testimony that defendant suffered from postpartum depression at the time of the offense. We affirm.

Two-and-a-half-year-old Moneka died in the early morning of July 7, 1999. Defendant had delivered her third child, Moneka's brother, six days prior and wanted to get some rest, but Moneka was keeping her awake. In order to keep Moneka quiet and to "teach her a lesson," defendant tied Moneka's hands and feet together, stuffed a sock in her mouth and wrapped tape around her mouth and neck. Moneka suffocated to death. Defendant admitted causing Moneka's death. The State charged defendant with two counts of first degree murder: acting with intent to kill or cause great bodily harm in violation of section 9—1(a)(1) of the Illinois Criminal Code of 1961 (the Code) (720 ILCS 5/9—1(a)(1) (West 1998)) and acting with the knowledge that her acts created a strong probability of death or great bodily harm in violation of section 9—1(a)(2) of the Code (720 ILCS 5/9—1(a)(2) (West 1998)).

Prior to trial, defendant disclosed her intention to call Dr. Robert Smith, a psychologist, as a witness during her case in chief. Some three years after Moneka's death, Dr. Smith interviewed defendant,

assorted relatives and Charles Powell (Powell), Moneka's father and defendant's former live-in boyfriend, regarding defendant's mental and physical condition at the time of the offense. Dr. Smith determined that, although defendant was not legally insane at the time of the offense, she did suffer from "a mental disease, Postpartum Depression," at the time. It was his opinion that, "as a result of her mental illness, she lacked the ability to cope with the stress of parenting three children and she was unable to appreciate the danger of her actions toward Moneka on the night of the offense."

On the basis of Dr. Smith's opinion, the State moved to bar defendant from presenting a defense of diminished capacity and/or postpartum depression since neither is a recognized defense in the State of Illinois. Defendant responded that she did not intend to raise an insanity defense or ask for a guilty but mentally ill instruction but, rather, intended to raise a reasonable doubt defense. She asserted that Dr. Smith's testimony related to defendant's state of mind at the time of the offense and was intended to show that defendant acted recklessly, in violation of the involuntary manslaughter statute (720 ILCS 5/9—3(a) (West 1998)), rather than intentionally or knowingly in violation of the first degree murder statute.

After hearing argument, the court determined that defendant was impermissibly trying to resurrect, through Dr. Smith's testimony, a section of the insanity defense statute struck by the legislature. At the time of defendant's offense, the insanity statute provided that "[a] person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct." 720 ILCS 5/6—2(a) (West 1998). Prior to August 20, 1995, the statute provided a defense where, as a result of mental disease or defect, a person lacked "substantial capacity *either* to appreciate the criminality of his conduct *or to conform his conduct to the requirements of law.*" (Emphasis added.) 720 ILCS 5/6—2(a) (West 1994). The court found that Dr. Smith's opinion made it sound as if defendant was unable to appreciate the criminality of her conduct even though she was not insane and held that defendant should not have the right to bring before the jury "something that's not an affirmative defense as if it's an affirmative defense."

The court also found that defendant's postpartum depression was not relevant to the issue of intent. Given defendant's circumstances at the time of the offense, the court determined that "anyone with any sense" could understand that she would be depressed and psychological evidence was not necessary to show that she was depressed. The court further noted that Dr. Smith had not opined that defendant's

postpartum depression negated her ability to form the intent to kill. The court granted the State's motion to bar a diminished capacity and/or postpartum depression defense and did not allow Dr. Smith to testify.

At trial, the State presented the testimony of numerous witnesses regarding the circumstances of Moneka's death and the investigation thereof, as well as defendant's signed statement admitting that she caused Moneka's death and describing the circumstances leading thereto. Defendant presented no evidence. Following closing argument, the court instructed the jury regarding the first degree murder charges. Over the State's objection, the court also gave the jury an instruction regarding involuntary manslaughter, finding some evidence presented that defendant's conduct was reckless. The jury found defendant guilty of first degree murder. The court denied defendant's motion for a new trial. At sentencing, the State asked for the death penalty but the court sentenced defendant to 30 years' imprisonment.

Defendant now appeals her conviction, arguing solely that the court committed reversible error when it granted the State's motion *in limine* to exclude Dr. Smith's testimony regarding defendant's mental state and the effect of her postpartum depression on her mental state. We review the court's grant of the motion *in limine* and its decision to bar Dr. Smith's testimony under the abuse of discretion standard. *Kimble v. Earle M. Jorgenson Co.*, 358 Ill. App. 3d 400, 408, 830 N.E.2d 814, 822 (2005). Accordingly, we will not reverse the court's ruling unless it is arbitrary, fanciful or unreasonable or no reasonable person could take the same view as the court or the court applied an impermissible legal standard. *Kimble*, 358 Ill. App. 3d at 408, 830 N.E.2d at 822.

Defendant asserts that, contrary to the court's finding, Dr. Smith's opinion was not an effort to revive the former insanity definition or an attempt to claim diminished capacity, which she acknowledges is not a recognized defense in Illinois. Rather, defendant urges that she sought to present Dr. Smith's testimony in order to support her theory of the case that, "while she did perform the acts which caused her daughter Moneka's death, she lacked the mental state required for a murder conviction, and in fact had acted with the less culpable mental state of recklessness." In other words, defendant argues that her theory of the case is a defense based on the statutory elements of the offense rather than an affirmative defense based on insanity or diminished capacity. However, as the court found, an impermissible affirmative defense is exactly what Dr. Smith's testimony would raise.

■ " 'The question of [a] defendant's state of mind at the time of the crime [is] a question of fact to be determined by the jury.' " *People*

*v. Raines*, 354 Ill. App. 3d 209, 220, 820 N.E.2d 592, 601 (2004), quoting *People v. Pertz*, 242 Ill. App. 3d 864, 903, 610 N.E.2d 1321, 1346 (1993). " 'Mental states, such as the intent to kill or to cause great bodily harm, are not commonly established by direct evidence and may be inferred from the character of the defendant's conduct and the circumstances surrounding the commission of the offense.' " *Raines*, 354 Ill. App. 3d at 220, 820 N.E.2d at 601, quoting *People v. Adams*, 308 Ill. App. 3d 995, 1006, 721 N.E.2d 1182, 1190 (1999).

■ The admissibility of psychiatric evidence regarding a defendant's intent or lack thereof, the ultimate issue in a murder prosecution, depends on whether the expert is to testify " 'to facts requiring scientific knowledge not within the common knowledge of the jury.' " *People v. Denson*, 250 Ill. App. 3d 269, 281, 619 N.E.2d 878, 886 (1993), quoting *People v. Ambro*, 153 Ill. App. 3d 1, 8, 505 N.E.2d 381, 385 (1987), *overruled in part on other grounds in People v. Chevalier*, 131 Ill. 2d 66, 544 N.E.2d 942 (1989). Unless a subject is difficult to comprehend and understand, expert opinions may not be admitted on matters of common knowledge. *Denson*, 250 Ill. App. 3d at 281, 619 N.E.2d at 886, quoting *Ambro*, 153 Ill. App. 3d at 8, 505 N.E.2d at 385. Here, defendant's circumstances at the time of the murder were such that a jury would be more than capable of determining, based on their common knowledge, that defendant was depressed and/or overwhelmed at the time and whether she acted recklessly, rather than knowingly or intentionally, as a result.

The evidence showed that more than a year prior to Moneka's death, defendant suggested that the then 1½-year-old child be sent to foster care because she had a bad attitude. At the time of Moneka's death, defendant lived in a small, dirty, unfurnished apartment, with the unemployed Powell, their three children, including the six-day-old newborn, Powell's mother and brother. The entire family slept on blankets on the floor, relied on takeout meals because there was no gas with which to cook, received only defendant's public assistance and Powell's mother's wages from working at Burger King as income and was soon to be evicted. Defendant was in pain from the recent delivery, was taking pain medication and was often alone with the children while the other adults went to work or to look for a job or an apartment. It does not require an expert to explain that defendant may have been depressed and had trouble coping with three children. It does not require an expert to explain that defendant was, to paraphrase defense counsel's closing argument, "desperate in tragic circumstances" and unable to take care of one child, let alone three. The court did not err in barring Dr. Smith's testimony on that basis.

Further, "recklessness is not a state of mind which requires expert

testimony." *Pertz*, 242 Ill. App. 3d at 902, 610 N.E.2d at 1346. Rather, it is a determination well within a jury's common knowledge and thus it is for a jury, not an expert psychologist, to determine whether defendant appreciated the risk involved when she tied Moneka up, put a sock in her mouth and taped her mouth shut. *Pertz*, 242 Ill. App. 3d at 902-03, 610 N.E.2d at 1346. Moreover, notwithstanding defendant's argument to the contrary, Dr. Smith would not be able to testify as to defendant's state of mind at the time of the offense because he was not with her nor did he observe her when she performed her actions. *Pertz*, 242 Ill. App. 3d at 902, 610 N.E.2d at 1346. Instead, he would only be able to testify to an opinion formed some three years after the offense rather than from personal observation at or near the time of the offense.

Defendant's assertion is that Dr. Smith's testimony bore directly on whether defendant's actions were intentional and/or knowing or were simply the reckless misconduct of a sick woman. The basic difference between involuntary manslaughter and first degree murder is the mental state that accompanies the conduct resulting in the victim's death, involuntary manslaughter requiring a less culpable mental state than first degree murder. *People v. DiVincenzo*, 183 Ill. 2d 239, 249, 700 N.E.2d 981, 987 (1998). Under sections 9—1(a)(1) and 9—1(a)(2) of the Criminal Code, a defendant commits first degree murder when she intentionally kills an individual without lawful justification or does so knowing that her acts create a strong probability of death or great bodily harm. 720 ILCS 5/9—1(a)(1), (a)(2) (West 1998). In contrast, a defendant commits involuntary manslaughter when she performs acts that are likely to cause death or great bodily harm to another and performs these acts recklessly. 720 ILCS 5/9—3(a) (West 1998); *DiVincenzo*, 183 Ill. 2d at 250, 700 N.E.2d at 987.

■ "A person is reckless or acts recklessly, when he *consciously disregards* a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Emphasis added.) 720 ILCS 5/4—6 (West 1998). In general, therefore, a defendant acts recklessly when she is aware that her conduct might result in death or great bodily harm, although that result is not substantially certain to occur, and consciously disregards that risk. *People v. Moore*, 358 Ill. App. 3d 683, 688, 832 N.E.2d 431, 436 (2005); *DiVincenzo*, 183 Ill. 2d at 250, 700 N.E.2d at 987. Dr. Smith's opinion does not state that defendant did any such thing, that she consciously disregarded the risk to Moneka when she tied her up,

stuffed a sock in her mouth and taped her mouth shut. Instead, his opinion appears to state the exact opposite.

■ Dr. Smith opined that defendant, as a result of mental illness, "was unable to appreciate the danger of her actions toward Moneka on the night of the offense." In effect, it was his opinion that defendant was unable to form a conscious awareness of the danger of her actions. Where there is no conscious awareness of a danger, there can be no "conscious disregard" of that danger, of the strong probability that death or great bodily harm will result to Moneka if the actions are taken. In other words, where there is no such awareness, there can be no reckless conduct.

Moreover, where there is no such awareness, there can be no intentional exploitation of that danger in order that death or great bodily harm result nor knowledge that the actions are practically certain to result in death or great bodily harm. Reckless conduct may generally involve a lesser degree of risk than conduct that creates a strong probability of death or great bodily harm (*DiVincenzo*, 183 Ill. 2d at 250, 700 N.E.2d at 987), but the three states of mind, intentional, knowing and reckless, have in common a conscious awareness that a risk, and a concomitant result, exists, either an intended (720 ILCS 5/4—4 (West 1998)) or "practically certain" (720 ILCS 5/4—5(b) (West 1998)) result, as in first degree murder, or "a substantial and unjustifiable risk *** that a result will follow" (720 ILCS 5/4—6 (West 1998)), as in involuntary manslaughter. If there is no conscious awareness of a risk and attendant result, there can be no culpable state of mind for either first degree murder or involuntary manslaughter.

Dr. Smith's testimony would, indeed, bear directly on the ultimate question of defendant's mental state, whether defendant had any conscious awareness of the risks attendant to her actions. However, by eliminating the possibility that defendant was consciously aware of what could happen when she bound and gagged Moneka, Dr. Smith's testimony would impermissibly eliminate any possibility of the jurors determining for themselves whether defendant intentionally, knowingly or recklessly killed Moneka.

Dr. Smith's opinion, in fact, sounds more like a statement of diminished capacity than of recklessness. The doctrine of diminished capacity, also known as the doctrine of diminished or partial responsibility, allows a defendant to offer evidence of her mental condition in relation to her capacity to form the *mens rea* or intent required for commission of the charged offense. 21 Am. Jur. 2d *Criminal Law* § 38 (1998). Similar to the insanity defense in that it calls into question the mental abnormality of a defendant, it differs in that it may be raised by a defendant who is legally sane. 21 Am. Jur. 2d *Criminal*

*Law* § 38 (1998). Diminished capacity is considered a partial defense because it is not presented as an excuse or justification for a crime but, rather, as an attempt to prove that the defendant, because she was incapable of forming the requisite intent of the crime charged, is innocent of that crime but likely guilty of a lesser included offense. 21 Am. Jur. 2d *Criminal Law* § 38 (1998); 40 Am. Jur. 2d *Homicide* § 109 (1999). To show diminished capacity, there must be evidence that, at the time of the murder, the defendant did not appreciate the nature of her conduct or was incapable of conforming her conduct as a result of mental disease or defect. 21 Am. Jur. 2d *Criminal Law* § 38 (1998). As the trial court found, this is what Dr. Smith's testimony would show and sounds very much like the former insanity defense done away with by our legislature in 1995. Diminished capacity can mitigate murder to manslaughter (40 Am. Jur. 2d *Homicide* § 109, n.2 (1999)) but it is a defense often deemed limited to specific intent crimes (40 Am. Jur. 2d *Homicide* § 109 (1999)) and is not recognized in Illinois. The court was entirely correct when it stated that Dr. Smith's opinion appeared to raise the specter of a defense which does not exist under Illinois law. Defendant could not raise it as an affirmative defense and, therefore, should not be permitted to raise it in the guise of a reasonable doubt argument. The court did not abuse its discretion in barring Dr. Smith's testimony.

For the reasons stated above, we affirm the decision of the circuit court.

Affirmed.

HOFFMAN, P.J., and ERICKSON, J., concur.