# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *People v. Nepras*, 2020 IL App (2d) 180081

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH S. NEPRAS, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-18-0081 |
| Filed | July 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 17-CF-447; the Hon. James S. Cowlin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Matthew J. Haiduk, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BRIDGES delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Brennan concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Kenneth S. Nepras, appeals his conviction of burglary with the intent to commit a theft (720 ILCS 5/19-1(a) (West 2016)). On appeal, he argues that he is entitled to a new trial because the trial court erroneously prohibited him from introducing expert testimony that he was incapable of forming the specific intent for the offense. Because the trial court did not abuse its discretion in barring the expert testimony, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3        Before his jury trial, defendant disclosed as an expert witness Dr. Robert Meyer, who would testify to defendant's mental state, and the State moved *in limine* to bar the testimony. Defendant responded that Dr. Meyer's testimony was admissible to show that defendant was incapable of the specific intent to commit a theft. The trial court granted the State's motion and barred Dr. Meyer from testifying.

¶ 4        The following facts were presented at defendant's trial. On May 5, 2017, shortly after 5 a.m., a police dispatcher received a 911 call from Philip Crimaldi, who reported an incident at a laundromat in Woodstock. The dispatcher sent police officers, who arrived at the laundromat during the 911 call.

¶ 5        According to Crimaldi, on May 5, 2017, he was homeless and living in a wooded area next to the laundromat. At about 5 a.m., he went to the laundromat to dry his blanket. As he approached the laundromat, he saw defendant walk in. Defendant tried to open the office door, and after failing to do so, he kicked in the door. Instead of entering the laundromat, Crimaldi called the police.

¶ 6        On cross-examination, Crimaldi acknowledged that he did not see defendant carry anything, such as a duffel bag, a hammer or mallet, or any burglary tools. He also admitted that he did not know why defendant entered the laundromat.

¶ 7        Officer Charles Vorderer of the Woodstock Police Department and several other officers arrived at the laundromat around 5:10 a.m. Upon entering the laundromat, Officer Vorderer saw that an office door had been locked but subsequently kicked in. As he and another officer entered the office, he heard sounds from behind another locked door. He heard "coins jingling and things being shuffled around." That door led to an area behind a row of dryers and two coin machines. Other officers pried open the door, entered the area, discovered defendant, and handcuffed him. There was no damage to either of the coin machines. Defendant had some change and a few miscellaneous items in his pockets.

¶ 8        After defendant was taken to the police station, the police determined that defendant's car was parked in the lot near the laundromat. Heather Meton was in the passenger seat. When Officer Vorderer searched defendant's car, he did not find any cash, contraband, burglary tools, or masks.

¶ 9        Officer Christopher Naatz of the Woodstock Police Department arrived just after Officer Vorderer did. He and Officer Vorderer entered the front door at the same time. The officers entered the office, and Officer Naatz could hear clanging coming from behind the wall of dryers.

¶ 10       Officer David Sharp of the Woodstock Police Department also responded to the scene. When he and the other officers entered the area behind the locked door, defendant was on the

floor, kneeling directly adjacent to the backs of the coin machines. Upon the officers entering that area, defendant put his hands up.

¶ 11     According to Meton, she had known defendant for about a month before the incident. In the early morning of May 5, 2017, defendant drove to Meton's home and asked her to ride along with him to Stockton to "pick up money from the mother of his child." Meton agreed, and defendant began driving on back roads. At one point, they parked in a lot in a strip mall. Meton did not know where they were.

¶ 12     Defendant parked the car and went into one of the businesses, and Meton remained in the car. Shortly thereafter, defendant returned to the car, grabbed his cell phone, and reentered the business. Meton estimated that defendant was in the building about five minutes before the police arrived. She did not know what he was doing inside.

¶ 13     Edward Serritella operated the laundromat. It was open 24 hours, 7 days a week. There was an office that was locked. Only he and his sole employee, Norma Gonzalez, had access to the office. When Serritella left the laundromat on May 4, 2017, the office door was locked. At any given time, each of the two coin machines contained about $2000 in coins and cash. Only Serritella had authorized access to the coin machines. Following defendant's arrest, Serritella inspected the coin machines and reported that neither had been tampered with.

¶ 14     Gonzalez worked at the laundromat, cleaning and assisting customers. According to Gonzalez, she had a key to the office but not to the area behind the dryers and coin machines.

¶ 15     On May 5, 2017, between 6:15 and 6:30 a.m., Serritella asked Gonzalez to meet with the police at the laundromat. She told the officers that about $30 in coins and bills had been kept in a small container on Serritella's desk, but the money was now missing. On cross-examination, she testified that, under a calculator, there was $250 in cash that was not touched.

¶ 16     Sergeant Robbie Branum of the Woodstock Police Department met with defendant at the police station. Defendant asked why he was there. Sergeant Branum told him that he had been in a business that did not belong to him. When Sergeant Branum asked defendant why he had been in the business, defendant answered that he was just trying to sleep. Defendant added that when he arrived the office door had already been forced open.

¶ 17     The jury found defendant guilty of burglary with the intent to commit a theft. Defendant filed a motion for a new trial, in which he contended, among other things, that the trial court had erred in barring Dr. Meyer's testimony. The trial court denied defendant's motion and sentenced him to 42 months' imprisonment. Defendant filed a timely notice of appeal.

¶ 18                                        II. ANALYSIS

¶ 19     On appeal, defendant contends that the trial court erred in barring admission of Dr. Meyer's expert testimony on the issue of whether defendant had the specific intent to commit a theft in the laundromat. The State responds that the evidence was properly excluded, because it essentially amounted to a diminished-capacity defense.

¶ 20     A criminal defendant has a right to a meaningful opportunity to present a complete defense. *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 58 (citing *Holmes v. South Carolina*, 547 U.S. 319, 331 (2006)). However, well-established rules of evidence permit a trial court to exclude evidence if its probative value is outweighed by unfair prejudice, confusion of the issues, or potential to mislead the jury. *Johnson*, 2018 IL App (1st) 140725, ¶ 58; see also Ill. R. Evid. 403 (eff. Jan. 1, 2011) ("Although relevant, evidence may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). A trial court has the inherent authority to admit or exclude evidence, and we review its decision to grant or deny a motion *in limine* for an abuse of discretion. *Johnson*, 2018 IL App (1st) 140725, ¶ 58. Decisions as to whether to admit expert testimony are likewise reviewed for an abuse of discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 21    A trial court abuses its discretion only when its decision is arbitrary, fanciful, or unreasonable or when no reasonable person would take the trial court's view. *Johnson*, 2018 IL App (1st) 140725, ¶ 59. Rather than consider whether it would have made the same decision, a reviewing court considers whether the trial court's decision was arbitrary, made without conscientious judgment, or was otherwise made in such a way that the trial court exceeded the bounds of reason and ignored recognized principles of law such that substantial prejudice resulted. *Johnson*, 2018 IL App (1st) 140725, ¶ 59.

¶ 22    A person commits burglary with the intent to commit a theft when he knowingly enters a building without authority and with the intent to commit a theft therein. 720 ILCS 5/19-1(a) (West 2016). Thus, to sustain a conviction, the State must prove that the defendant (1) entered a building without authority and (2) with the intent to commit a theft. *People v. Ybarra*, 272 Ill. App. 3d 1008, 1010 (1995). The manner of entry, as well as the intent to commit a theft, may be inferred from circumstantial evidence. *People v. Smith*, 2014 IL App (1st) 123094, ¶ 13. Indeed, the *mens rea* of a crime is rarely proved with direct evidence and is generally inferred from circumstantial evidence. *People v. Mayo*, 2017 IL App (2d) 150390, ¶ 30. Circumstances relevant to prove intent to commit burglary include the time, place, and manner of entry; the defendant's activity within the premises; and any alternative explanations offered for his presence. *People v. Grathler*, 368 Ill. App. 3d 802, 808 (2006).

¶ 23    Because a defendant's state of mind at the time of the crime is a question for the trier of fact, an expert witness who was not present when the defendant entered the premises cannot opine whether the defendant acted with a specific mental state. *People v. Frazier*, 2019 IL App (1st) 172250, ¶ 33 (citing *People v. Hulitt*, 361 Ill. App. 3d 634, 639 (2005)). Thus, allowing expert testimony regarding a defendant's mental state at the time of the offense would usurp the province of the trier of fact. *Frazier*, 2019 IL App (1st) 172250, ¶ 33.

¶ 24    Some jurisdictions recognize the affirmative defense of diminished capacity, which permits a legally sane defendant to present evidence of his mental illness to negate the specific-intent element of a particular crime. *Johnson*, 2018 IL App (1st) 140725, ¶ 63; see also *Hulitt*, 361 Ill. App. 3d at 640. However, it is well established that diminished capacity is no longer recognized as a defense in Illinois. *Frazier*, 2019 IL App (1st) 172250, ¶ 35.

¶ 25    Here, defendant sought to admit expert testimony to show that, at the time he entered the laundromat, he could not form the specific intent to commit a theft. However, because Dr. Meyer was not present when defendant entered the laundromat, he was not capable of opining whether defendant had the intent to commit a theft. Further, the use of expert testimony to show whether defendant had the specific intent to steal would have usurped the province of the trier of fact. Thus, the trial court did not abuse its discretion in barring Dr. Meyer's testimony.

¶ 26    Defendant contends, however, that he should have been allowed to introduce such evidence, because there was no direct evidence of his intent to commit a theft. We disagree.

- 4 -

As noted, specific intent is rarely proved with direct evidence and is most often proved with circumstantial evidence. Accordingly, it was up to the jury to determine, based on that circumstantial evidence, whether defendant entered the laundromat with the intent to commit a theft. The lack of direct evidence did not justify admission of the otherwise prohibited expert testimony.

¶ 27 Indeed, there was ample circumstantial evidence from which the jury could infer that defendant entered the laundromat intending to commit a theft. Defendant emphasizes that he was found without burglary tools, but the door to the office had been opened forcibly. Defendant entered the office and was found in an area that was ordinarily locked and that gave him access to the rear of coin machines. Although defendant was arrested without money or property traceable to the laundromat, Gonzalez testified that about $30 was missing. The absence of evidence of coin-machine tampering could be explained by the prompt arrival of the police soon after defendant entered the laundromat. The jury could reasonably conclude that defendant simply did not have the opportunity to break into the machines. Finally, Meton testified that defendant had told her that they were going on an errand to retrieve money. He claimed that they would ride to Stockton to get money from his child's mother, but he drove to the laundromat instead. Defendant's expressed desire for money, combined with his conduct at the laundromat, provided a sufficient basis for the jury to determine that he entered with the intent to commit a theft.

¶ 28 To the extent defendant's proposed expert testimony was effectively a diminished-capacity defense, the trial court did not abuse its discretion in barring it. As discussed, that defense is no longer available in Illinois. More importantly, a defendant may not raise it in the guise of a reasonable doubt argument. *Hulitt*, 361 Ill. App. 3d at 641.

¶ 29 Further, defendant's reliance on *People v. Strader*, 278 Ill. App. 3d 876 (1996), is misplaced. In *Strader*, the defendant presented an affirmative defense of second degree murder based on heat of passion. *Strader*, 278 Ill. App. 3d at 881. Accordingly, the defendant had the burden to prove that defense. *Strader*, 278 Ill. App. 3d at 882. Thus, the appellate court held that it was error (albeit harmless) for the trial court to have barred the defendant's proposed expert testimony related to his heat-of-passion defense to first degree murder. *Strader*, 278 Ill. App. 3d at 883-85. Here, however, defendant never raised an affirmative defense. Rather, he merely challenged whether the State proved that he had the requisite intent to commit a theft. Thus, he had no burden of proof. Because *Strader* is distinguishable from this case, it does not support defendant.

¶ 30 For the foregoing reasons, the trial court did not abuse its discretion in barring defendant from introducing expert testimony on the issue of whether he entered the laundromat with the intent to commit a theft.

¶ 31                                    III. CONCLUSION
¶ 32 For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 33 Affirmed.