2024 IL App (1st) 230636-U

No. 1-23-0636

Order filed December 16, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 6011601 |
| | ) | |
| SHENIQUA CLEVELAND, | ) | The Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for involuntary manslaughter, where there was sufficient evidence to prove beyond a reasonable doubt that she consciously disregarded a substantial and unjustifiable risk of death or great bodily harm.

¶ 2    Following a bench trial, defendant Sheniqua Cleveland was convicted of involuntary manslaughter (720 ILCS 5/9-3(a) (West 2020)) and was sentenced to four years' imprisonment. On appeal, defendant contends there was insufficient evidence to prove beyond a reasonable doubt

that she recklessly engaged in conduct likely to cause death or great bodily harm when she ran through a hospital and made physical contact with the victim, John Sobczak. Alternatively, defendant requests that this court reduce her conviction to reckless conduct where, at most, she disregarded a risk of bodily harm. We affirm.

¶ 3    Defendant was charged by indictment with one count of involuntary manslaughter, which alleged that she unintentionally caused Sobczak's death when she recklessly and without legal justification engaged in conduct that was likely to cause death or great bodily harm.

¶ 4    The evidence at trial established that Sobczak died after defendant collided with him at Jackson Park Hospital. Jackson Park Hospital security officer Parlo Meyer testified that on June 28, 2021, around 11:30 a.m., he was near the emergency room entrance of the hospital. The entrance was to his left and a sliding glass door, leading to a hallway, was in front of him. The sliding glass door could accommodate one person at a time and the hallway on the other side of the glass door could accommodate six to eight people. Meyer identified himself in a still frame from a surveillance video. The photo, which is included in the record on appeal, depicts Meyer standing near the entrance of the hospital. A convex three-sided wall connects the hospital entrance, to Meyer's left, and a sliding glass door, in front of Meyer.

¶ 5    Meyer observed Sobczak enter the hospital and walk towards the sliding glass door.[1] Concurrently, Meyer was alerted to a "Code Pink," indicating that a patient was "escap[ing]." He then saw defendant "running fast" towards the sliding doors as Sobczak was entering them from the opposite direction. Defendant ran "straight into" Sobczak and knocked him backwards, her body "coming in to him." Meyer demonstrated defendant's motion; the State noted that Meyer

---

[1] Meyer did not identify defendant or Sobczak by name at trial.

"mov[ed] his torso forwards with his arms in a 90-degree angle out in front of him with his fists up." The collision occurred between the sliding doors. When asked whether Sobczak could have avoided defendant, Meyer testified that Sobczak could not. Defendant was then apprehended by Meyer and a second security guard.

¶ 6      On cross-examination, Meyer reiterated that he first saw defendant in the doorway of the sliding glass door, where the physical contact occurred. As the Code Pink was called, she ran into Sobczak and he fell backwards. Meyer acknowledged that hospital policy required security personnel to run through the hospital when alerted to a Code Pink.

¶ 7      Cook County assistant medical examiner Dr. David Waters, who performed an autopsy on Sobczak, testified that Sobczak suffered a skull fracture, brain injuries, and bruising to his chest, shoulder, and arm. Dr. Waters ruled Sobczak's death a homicide.

¶ 8      Chicago police detective James Smith testified that he investigated Sobczak's death and determined that defendant, whom he identified in court, was a suspect. Smith and another detective met with defendant at the police station on July 3, 2021, and recorded the interrogation. The State entered the video into evidence. The recording is in the record on appeal and has been viewed by this court.

¶ 9      In the video, Smith advises defendant of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and defendant agrees to speak. Defendant says that she checked herself into the hospital on June 28, 2021. Hospital staff denied her request to use a telephone so that she could call her family to secure care for her children and ignored a second request to call on defendant's behalf. Defendant then decided to "run out" of the hospital. Defendant saw Meyer through the glass door prior to the collision. As she was running, defendant turned her head backwards to see

if she was being chased. When she turned her head forward, she saw Sobczak and made contact with him. She states that she did not see Sobczak until she made physical contact with him and denies pushing him. Defendant adds that when she saw Sobczak, she tried to avoid him. She says that the contact with Sobczak occurred in a "small space" after she ran through the sliding glass door.

¶ 10    The State entered four surveillance videos of the incident into evidence.[2] The videos are in the record on appeal and have been viewed by this court.

¶ 11    The first video, labeled Camera 12, depicts a hallway adjacent to a room with an open door. Directly outside of the open door, facing the room, is a hospital employee sitting behind a desk. Defendant leaves the room and walks towards the bottom of the frame, exiting view.

¶ 12    The second video, labeled Camera 10, depicts a different area of the hospital. A passageway, containing a desk, connects two uncarpeted parallel hallways. A nurse sits behind the desk and a security guard stands in one of the hallways. Defendant enters the other hallway and runs in the opposite direction of the employees. The security guard then runs after defendant.

¶ 13    The third video, labeled Camera 11, depicts the nurse behind the desk and the security guard. Defendant enters the top of the frame, and the security guard looks in her direction and walks toward her. Defendant then runs out of the frame, away from the security guard. The security guard then runs in the same direction, behind defendant.

¶ 14    The fourth video, labeled Camera 6, depicts the entrance of the hospital where Meyer is standing at his post. A three-sided convex wall connects the hospital entrance, to Meyer's left, and

---

[2] At trial, the State published portions of only two videos to the court. In delivering judgment, the court stated that it considered all four videos.

a sliding glass door, in front of Meyer. Sobczak enters the hospital and proceeds around the three-sided convex wall toward the sliding glass door. Sobczak turns the first corner of the wall. Immediately after Sobczak turns the second corner, defendant enters the frame from the opposite direction and makes physical contact with Sobczak directly next to the second corner. Defendant's posture and arm positioning are not clear from the video. Defendant then runs towards the entrance doors but is apprehended by Meyer and a second security guard.

¶ 15    In closing, the State argued that defendant consciously disregarded a substantial risk of death or great bodily harm by running through the hospital and colliding with Sobczak. The State argued that Meyer observed defendant through the sliding glass door and saw her raise her arms, clench her fists, and lean into Sobczak. The State contended that defendant made contact with Sobczak in a hallway "wide enough for multiple people to fit through." According to the State, this evidence supported the inference that defendant saw Sobczak through the glass door, was not "caught off guard" by his presence, and could have avoided him.

¶ 16    Defense counsel argued, *inter alia*, that the State did not prove beyond a reasonable doubt that defendant consciously disregarded a substantial risk of death or great bodily harm. Counsel argued that Meyer's testimony and the surveillance videos reflected that defendant was not consciously aware of anybody in her path when she ran and that, when she became aware of Sobczak, she did not have the "ability," "space," or "time" to avoid Sobczak. Counsel also argued that the surveillance footage reflected that defendant was unable to see Sobczak because he was not in front of the sliding glass door when she ran.

¶ 17    The trial court stated that it considered all the evidence and, citing the "location" and "manner" of defendant's conduct, found her guilty of involuntary manslaughter.

¶ 18 The trial court denied defendant's motion for a new trial. Following a hearing, the trial court sentenced defendant to four years' incarceration. In imposing sentence, the court stated that defendant's conduct in running through the hospital was "wildness." The court denied defendant's motions for a stay of mittimus and for reconsideration of her sentence.

¶ 19 On appeal, defendant contends the State failed to prove her guilty of involuntary manslaughter where the evidence did not establish that her conduct was reckless or likely to cause death or great bodily harm. Alternatively, defendant requests this court reduce her conviction to reckless conduct where, at most, she disregarded a risk of bodily harm.

¶ 20 To sustain a criminal conviction, the State must prove beyond a reasonable doubt every fact necessary for the crime charged. *In re Winship*, 397 U.S. 358, 364 (1970); U.S. Const. amends. V, XIV. On a challenge to the sufficiency of the evidence, we must determine whether the evidence, viewed in a light most favorable to the State, would lead any rational trier of fact to conclude that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Gray*, 2024 IL 127815, ¶ 20; see also *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To do so, we must carefully examine the record. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). All reasonable inferences are drawn in favor of the State. *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. Determinations regarding the weight of the evidence and the credibility of witnesses are the province of the trial court, and we may not substitute those determinations with our own. *People v. Davis*, 2023 IL App (1st) 220231, ¶ 47.

¶ 21 A defendant commits involuntary manslaughter when she unintentionally kills an individual while engaging in conduct that is likely to cause death or great bodily harm, and her conduct is performed recklessly and without lawful justification. 720 ILCS 5/9-3 (West 2020). A

defendant is reckless if she consciously disregards a substantial and unjustifiable risk that particular circumstances exist or a result will follow, and her disregard is a gross deviation from the standard of care of a reasonable person. 720 ILCS 5/4-6 (West 2020); *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 27. Determinations regarding a defendant's *mens rea* are the province of the trier of fact and may be inferred through circumstantial evidence. *People v. Soto*, 2022 IL App (1st) 201208, ¶ 136. If a defendant is not consciously aware of a risk and accompanying result, the requisite *mens rea* for involuntary manslaughter cannot be established. *People v. Hulitt*, 361 Ill. App. 3d 634, 640 (2005).

¶ 22    The critical issue is whether any rational trier of fact, viewing the evidence in a light most favorable to the State and drawing all reasonable inferences in its favor, would conclude that defendant consciously disregarded a substantial and unjustifiable risk of death or great bodily harm when she ran through a hospital and made physical contact with Sobczak, and whether her disregard was a gross deviation from the standard of care of a reasonable person.

¶ 23    Here, defendant told police that she checked herself into the hospital but was not allowed to place phone calls in order to secure care for her children. Defendant then ran down an uncarpeted hallway to escape the hospital. Defendant acknowledged to police that she could see Meyer on the other side of the sliding glass door, which, according to Meyer's testimony, could accommodate only one person at a time. Defendant told police that she turned her head around while running, and when she looked forward, she made physical contact with Sobczak after she crossed the sliding glass door. Meyer, who observed the collision, testified that defendant was running "fast" and demonstrated her movement, which the State described for the record as torso forward, fists

clenched, and arms extended with elbows at 90-degree angles. The video of the incident reflects that defendant continued running after the collision occurred.

¶ 24 Viewed in a light most favorable to the State and drawing all reasonable inferences in its favor, a rational trier of fact could conclude beyond a reasonable doubt that defendant consciously disregarded a substantial risk of death or great bodily harm when she ran "fast" through an uncarpeted hallway of a hospital, saw a security guard on the other side of a glass door narrow enough to accommodate only one person, turned her head to look backwards as she ran, and made physical contact with Sobczak. *Soto*, 2022 IL App (1st) 201208, ¶ 136. A rational trier of fact could also conclude beyond a reasonable doubt that such conduct was a gross deviation from the standard of care that a reasonable person would exercise under the circumstances, particularly where defendant passed three other individuals before colliding with Sobczak. See, *e.g.*, *People v. Frantz*, 150 Ill. App. 3d 296, 301-02 (1986).

¶ 25 Defendant also argues that there was insufficient evidence proving beyond a reasonable doubt that the act of running through the hospital and making physical contact with another was likely to cause death or great bodily harm. In support, defendant differentiates her case from other cases where the reviewing court affirmed convictions for involuntary manslaughter based on instances of more egregious conduct. See, *e.g.*, *People v. Jones*, 404 Ill. App. 3d 734, 750 (2010) (defendant stepped on victim's neck, causing death by asphyxiation); *People v. Kolzow*, 301 Ill. App. 3d 1, 6 (1998) (defendant left child unattended in vehicle for four hours, causing child's death); *People v. Henry*, 86 Ill. App. 3d 602, 604 (1980) (defendant accompanied victim to bathroom and kicked him to death). However, determinations regarding whether conduct is likely to cause death or great bodily harm are fact-specific inquiries. See, *e.g.*, *Jones*, 404 Ill. App. 3d at

744-45. Under the facts of this case, a rational trier of fact could conclude that making contact with another person in the emergency room area of a hospital after running at a "fast" speed through an uncarpeted hallway while looking in the opposite direction carried a likelihood of death or great bodily harm.

¶ 26    Accordingly, construing all the evidence and reasonable inferences therefrom in the light most favorable to the State, we find the evidence was sufficient to prove beyond a reasonable doubt that defendant was guilty of involuntary manslaughter when she consciously disregarded a substantial and unjustifiable risk of death or great bodily harm. The judgment of the trial court is affirmed.

¶ 27    Affirmed.

¶ 28    JUSTICE PUCINSKI, specially concurring:

¶ 29    I reluctantly concur.  I can see no reason why the hospital would not allow the defendant to make care arrangements for her children.  That decision by the hospital staff exasperated, with good reason, the defendant, which in turn led to her attempt to leave the hospital. Her decision to recklessly run is an example of what happens when staff in charge of care doesn't take time to listen and have some compassion and patience.  This is a tragic death and conviction which were both totally avoidable.