2026 IL App (1st) 231786-U

FOURTH DIVISION
January 29, 2026

No. 1-23-1786

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 2197101 |
| | ) | |
| KATO WARE, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

ORDER

¶ 1   *Held*:   The circuit court did not err by dismissing the defendant's postconviction petition at the first stage.

¶ 2   A jury found the defendant-appellant, Kato Ware, guilty of first degree murder, and the circuit court sentenced him to 30 years' imprisonment. On April 25, 2023, Mr. Ware filed a *pro se* postconviction petition, challenging his conviction. On June 16, 2023, the trial court dismissed the petition as frivolous and without merit. On appeal, Mr. Ware argues that the trial court erred by dismissing his postconviction petition because trial counsel provided ineffective assistance of

counsel when he failed to call an occurrence witness who would mitigate his guilt and failed to present evidence of Mr. Ware's mental health. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                     BACKGROUND

¶ 4      We state only the facts necessary to resolve this appeal. For a full recitation of the facts, see *People v. Ware*, 2019 IL App (1st) 160989.

¶ 5      On May 17, 2012, Sidney McDowell and his friend, Emmanuel Barnett, were walking in the area of 80th Street and Laflin Street, when Eric Washington approached them and told them that Mr. Ware had pointed a firearm at him because he did not pay the "tax" for selling drugs in the neighborhood. Later that day, they saw Mr. Ware on the front porch of Brianna Gary's house. Mr. McDowell approached Mr. Ware and asked why he pulled a gun on Mr. Washington. While the conversation began civilly, it escalated to swearing and mutual threats. Mr. Ware asked for and received a gun from Clear Huddleston, who was also on the porch, and pointed it at Mr. McDowell. According to multiple witnesses, Jamael Harris tried to defuse the situation by standing in between them. Mr. McDowell walked away to make a phone call to get a firearm. Then, Mr. Ware ran toward Mr. McDowell pointing the firearm at him and they continued arguing.

¶ 6      Mr. Barnett testified that Mr. Ware and Mr. McDowell were arguing about three to four feet away from each other and Mr. Ware was holding a firearm near Mr. McDowell's face. He said Mr. McDowell "tried to get the gun out of his face" and slapped the top of Mr. Ware's hand. Then, he heard a gunshot and saw Mr. McDowell on the ground.

¶ 7      Mr. Washington testified that when Mr. Ware pointed the gun at Mr. McDowell they struggled over the firearm, it discharged, and Mr. McDowell fell to the ground.

¶ 8 Marshawn Petty, a neighbor of Ms. Gary, heard loud arguing and looked out his window. He saw Mr. Ware cross the street while pointing a gun at Mr. McDowell's face. He observed them wrestling over the firearm and then saw Mr. Ware yank the firearm back before it went off. He testified that Mr. McDowell was not touching Mr. Ware when the firearm discharged and that Mr. Ware seemed surprised and ran away.

¶ 9 Ms. Gary observed part of the incident through her window. She testified that she saw Mr. Ware approaching Mr. McDowell when she observed him raising his arm but a tree blocked her view of his hand. She went to a different room of the house and heard a gunshot but did not see anything.

¶ 10 Approximately two weeks after the shooting, Mr. Ware was arrested and charged for killing Mr. McDowell. Prior to their deliberations, the trial court instructed the jury on first degree murder, second degree murder, and involuntary manslaughter. The jury found Mr. Ware guilty of first degree murder, and the trial court sentenced him to 30 years' imprisonment. Mr. Ware appealed, and his conviction and sentence were affirmed.

¶ 11 On April 25, 2023, Mr. Ware filed the instant *pro se* postconviction petition. In the postconviction petition, he alleged that his trial counsel was ineffective for failing to call Jameal Harris as a witness, since he could have testified that Mr. Ware feared for his life and was aggressively trying to take the firearm from him. Mr. Ware stated he told his attorney how to reach him but she said she was unable to contact him. In the petition he also claimed that trial counsel was ineffective for failing to present information about his mental health. He argued that if his attorney presented the evidence he would have been convicted of a lesser charge or found not guilty.

On June 16, 2023, the trial court denied the postconviction petition. On October 11, 2023, this court granted Mr. Ware leave to file a late notice of appeal, which was filed that day.

¶ 12                                    ANALYSIS

¶ 13    We note that we have jurisdiction to consider this matter, as Mr. Ware filed a timely notice of appeal. See Ill. S. Ct. R. 606(c) (eff. July 1, 2017).

¶ 14    Mr. Ware argues that the trial court erred by dismissing the postconviction petition because the petition contained an arguable basis for ineffective assistance of counsel based on failing to present mental health history and failing to present a witness that corroborated Mr. Ware's theory.

¶ 15    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a criminal defendant with a mechanism, where he or she can argue that his or her sentence and conviction were the result of a substantial denial of his or her constitutional rights under the United States Constitution, Illinois Constitution, or both. *People v. English*, 2013 IL 112890, ¶ 21. A postconviction proceeding is not an appeal from the judgment, but rather, it is a collateral attack on the trial court proceedings. *English*, 2013 IL 112890, ¶ 21. To receive postconviction relief, a defendant must show a substantial deprivation of his or her federal or state constitutional rights in the trial court proceedings, which produced the challenged judgment. *English*, 2013 IL 112890, ¶ 21.

¶ 16    To present a gist of a constitutional claim, a defendant need only "present a limited amount of detail." *People v. Delton*, 227 Ill. 2d 247, 254 (2008). However, this should not be misunderstood to mean that a defendant does not need to provide any factual detail. *Delton*, 227 Ill. 2d at 254. While a petitioner is not required to provide a complete factual recitation, he or she must set forth "some facts which can be corroborated and are objective in nature or contain some

explanation as to why those facts are absent." *Delton*, 227 Ill. 2d at 254-55. As such, the failure to attach necessary affidavits, records, or other evidence or explain their absence is fatal to the petition and is grounds for summary dismissal. *Delton*, 227 Ill. 2d at 255.

¶ 17     A postconviction proceeding operates in three stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). In the first stage, taking the allegations as true, the trial court must, within 90 days, independently review the petition and determine whether the petition is frivolous or patently without merit and whether it presents a gist of a constitutional claim. *Hodges*, 234 Ill. 2d at 10. If the court determines that the petition is patently without merit or frivolous, the court must dismiss the petition in a written order. *Hodges*, 234 Ill. 2d at 10. A petition is deemed frivolous or patently without merit if the petition has no arguable basis in law or fact. *Hodges*, 234 Ill. 2d at 11-12. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Sparks*, 393 Ill. App. 3d 878, 883 (2009). The review of a first-stage dismissal of a postconviction petition is *de novo*. *People v. Delton*, 227 Ill. 2d 247, 255 (2008).

¶ 18     A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Henderson*, 2013 IL 114040, ¶ 11. To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 19     To establish deficient performance, the defendant must show that his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194,

219 (2004) (citing *Strickland*, 466 U.S. at 687). " 'Effective assistance of counsel refers to competent, not perfect representation.' " *Evans*, 209 Ill. 2d at 220 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984)). Mistakes in trial strategy or tactics do not necessarily render counsel's representation defective. *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988).

¶ 20    Mr. Ware argues that his counsel was ineffective for failing to present evidence of his mental health and how that impacted his decision making during the killing of Mr. McDowell. He claims his trial counsel should have brought up his suicide attempt after his conviction, his hospitalization at the age of 10, and his history of taking psychotropic medication.

¶ 21    The State argues that the State of Illinois no longer allows the "diminished capacity" defense and any evidence of mental health that seeks to attack the *mens rea* element of a crime is categorically banned, citing *People v. Hulitt*, 361 Ill. App. 3d 634 (2005). We disagree.

¶ 22    In *People v. Valdez*, 2022 IL App (1st) 181463, ¶ 106, this court stated it questioned the premise of *Hulitt*, 361 Ill. App. 3d 634, that mental health evidence is inadmissible if it can be "shoehorned into a vague and imprecise definition of 'diminished capacity.' " Instead, this court found that "courts should determine the admissibility of psychological or other mental-state evidence offered to rebut *mens rea* by using the same source for which they determine any other evidentiary question in an Illinois courtroom—the Illinois Rules of Evidence." *Valdez*, 2022 IL App (1st) 181463, ¶ 106. "[T]he right to present a defense does not include the right to introduce irrelevant evidence." *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 44.

¶ 23    In this case, we ask about the relevance of the evidence of his mental health to the trial question of Mr. Ware's *mens rea*. We note initially that the jury could not have considered Mr. Ware's suicide attempt after his conviction since it occurred after the trial. Additionally, his

hospitalization occurred when he was 10 years old, about 9 years before his arrest in this matter. The relevance of that hospitalization, on the surface, seems to be remote, and Mr. Ware did not claim that he is suffering from any of the same issues that led to his previous hospitalization. Mr. Ware also cites his abuse of psychotropic medication and illegal substances and the fact that he would "black out" while using them as an indication of his mental state. However, there was no indication that he was forced to consume or use these substances, and voluntary intoxication is not a defense to a crime. *People v. Rutigliano*, 2020 IL App (1st) 171729, ¶ 72 (stating voluntary intoxication is not a defense for first degree murder). Moreover, there is no indication that Mr. Ware was under the influence of substances or suffering from any mental health issues at the time of the killing, and as a result, none of the mental health evidence is relevant. Therefore, the trial court did not err by dismissing the mental health portion of the postconviction petition.

¶ 24    Mr. Ware argues that his trial counsel was ineffective for failing to call Jamael Harris as a witness. He claims Mr. Harris would have testified Mr. McDowell aggressively attacked Mr. Ware, tried to take the firearm from him, and that Mr. Ware was in fear for his life.

¶ 25    "The [postconviction] petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2022). "The purpose of the 'affidavits, records, or other evidence' requirement is to establish that a petition's allegations are capable of objective or independent corroboration." *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). "[F]ailure to attach the necessary supporting material or explain its absence is 'fatal' to a postconviction petition and alone 'justifies the petition's summary dismissal.' " *People v. Harris*, 2019 IL App (4th) 170261, ¶ 13 (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). Although an affidavit is not required in all instances where a

defendant raises a claim of ineffective assistance of counsel due to the failure to call a witness, "in most cases where a claim is raised, without an affidavit, there can be no way to assess whether the proposed witness could have provided evidence that would have been helpful to the defense." *People v. Dupree*, 2018 IL 122307, ¶ 34. "Rather, this court has always held that dismissal is proper when the record or other evidence attached to the petition does not support the petitioner's claim." *Dupree*, 2018 IL 122307, ¶ 34.

¶ 26    Here, since no affidavit was supplied from Mr. Harris, we are left with the self-serving statement of Mr. Ware. Even considering Mr. Ware's reason for not obtaining an affidavit from Mr. Harris, Mr. Ware's statement does not show us that Mr. Harris would provide any testimony on Mr. Ware's behalf. It is mere speculation that Mr. Harris would have helped Mr. Ware's defense. By Mr. Ware's own admission in his affidavit, Mr. Harris does not want direct contact with him, which seems to indicate a potential unwillingness to help Mr. Ware.

¶ 27    If we reviewed the contents of Mr. Ware's postconviction petition in contrast with a detective supplemental report detailing Mr. Harris' interview, we find the same result.

¶ 28    In the supplemental report of Chicago Police Department Detective Brian Forberg, which was provided to defense counsel and part of the impounded record in the trial court, Detective Forberg stated he spoke to Mr. Harris about the incident. Mr. Harris said he heard arguing and he went to the area of the argument to find out what was happening. When he arrived, he saw Mr. Ware and Mr. McDowell arguing with each other, stating "you ain't gonna do nothing." Mr. Harris stood between the two of them to break up the argument and he did not observe a firearm on Mr. McDowell. After the tension seemingly subsided, Mr. Harris walked away and made it to the

corner of the street block when he heard a loud pop. After he realized it was a gunshot, he went back to the area and saw Mr. McDowell lying on the ground motionless.

¶ 29   That differs from Mr. Ware's portrayal of Mr. Harris' purported testimony if called as a witness. Courts of review have "consistently upheld the dismissal of a postconviction petition when the allegations are contradicted by the record from the original trial proceedings." *People v. Torres*, 228 Ill. 2d 382, 394 (2008). According to the report, Mr. Harris said he walked away when he thought the fight had ended and had walked about a block when he heard a firecracker sound, which was the gunshot. He stated when he turned around he could not see the area where the altercation occurred because a tree was in his way. That directly contradicts Mr. Ware's statement that Mr. Harris saw Mr. McDowell aggressively reach for the firearm and that Mr. Ware was scared for his life. The trial court did not err by finding that this claim lacked merit. As a result, we find the trial court did not err by dismissing the postconviction petition.

¶ 30                                    CONCLUSION

¶ 31   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32   Affirmed.